Argued April 2, modified April 30, 1929.

# LOWELL C. PAGET *v.* JOHN L. CORDES.

(277 Pac. 101.)

For appellant there was a brief and oral arguments by *Mr. Frank S. Grant,* City Attorney, and *Mr. R. A. Imlay,* Deputy City Attorney.

For respondent there was a brief over the names of *Mr. W. O. Sims* and *Mr. Emerson U. Sims,* with an oral argument by *Mr. W. O. Sims.*

McBRIDE, J.—One of the principal errors alleged was the refusal of the court to require the plaintiff to elect upon which cause of action he would proceed, and presents a rather novel question to this court never passed upon as here presented.

The contention of the defendant is, that, under the testimony of plaintiff, the transaction was one complete transaction from the alleged seizure of the plaintiff, taking him before another officer of higher rank, and the final act of imprisoning him in the police jail; and the assault, if any was committed, was simply an element in a single transaction, which finally resulted in the wrongful imprisonment of plaintiff; that plaintiff has split his cause of action, which was entire, from the first alleged assault to the last alleged imprisonment, into two causes, and should have been compelled to elect upon which he should proceed.

■ The authorities are clear, that if a party divides his cause of action and brings an action upon one part of the transaction so divided, and recovers upon that portion, he will not be allowed to recover in a subsequent action upon that portion of the cause of action discarded in his first suit. Most of the authorities cited by defendant relate to cases of that character. Defendant's principal case cited is *Harvey* v. *Southern Pacific Co.,* 46 Or. 505 (80 Pac. 1061). In that case the plaintiff united in one cause of action, without any separation, a claim at common law against the defendant for negligently running over

and killing a cow, and also a claim under the statute against the defendant for failing to fence its track, as required by law, whereby the cow wandered on the track and was killed by defendant's locomotive. In the common-law cause of action, he would have been entitled to the value of the cow and the costs of the action. Under the statutory cause of action, he would have been entitled to the value of the cow, a reasonable attorney's fee, and costs and disbursements. The Circuit Court very properly required him to elect which cause of action he wished to proceed upon, but it will be noticed in that case the statutory remedy and the common-law remedy were inconsistent and serious difficulty would have arisen in the matter of verdict and judgment, if a general verdict should be rendered, and the action of the court in requiring the plaintiff to elect was upheld by Judge WOLVERTON, but a statement in these words was made:

"The practice, however, of allowing or disallowing a motion of the kind, is a matter largely within the sound discretion of the trial court: *Manders* v. *Craft,* 3 Colo. App. 236 (32 Pac. 836); *Carlton* v. *Pierce,* 1 Allen (Mass.), 26; *Hawley* v. *Wilkinson,* 18 Minn. 525 (Gil. 468); *Plummer* v. *Mold,* 22 Minn. 15; *Wagner* v. *Nagel,* 33 Minn. 348 (23 N. W. 308); *Kerr* v. *Hays,* 35 N. Y. 331."

■ It is clear in that case that the remedies on the two causes of action were so inconsistent that great confusion would have resulted in a trial. The authorities, while holding that the intermingling of two causes of action, or stating a single cause of action in different terms, is often objectionable, make an exception. We find the rule fairly stated in Phillips on Code Pleading as follows:

"§ 206. * * The needless multiplication of counts in common-law pleading had grown to be burdensome, and the Reformed Procedure undertook to correct this abuse, by requiring only the operative facts to be stated, as they actually occurred, and without unnecessary repetition. Under this new procedure, each separate statement is intended to set forth a distinct and independent right of action; and the rule is, that a plaintiff having but one right of action is not permitted to set it forth in two or more different forms.

"207. Duplicate Statement, continued.—The rule just stated is not an inflexible rule, and is sometimes made to yield to the demands of justice; for it is a distinguishing merit of the Reformed Procedure, that it makes formal requirements subservient to the rights of parties and the ends of justice. The reformed system is a substitute for both common-law pleading and equity pleading; it has not taken away any right; it has effected only the manner of stating a right. A plaintiff may, in a complaint under the code state any right of action, with demand of appropriate relief, that he might formally state in a declaration at law, or in a bill in chancery. If a plaintiff has two distinct grounds for a single recovery, he may now, as before, make both grounds available in one action; and so, if he has but a single right of action, resting upon one or the other of two grounds, and can not foreknow which ground may be established by the evidence, he ought to be allowed, now as formerly, so to frame his complaint as to adapt it to the possible state of the proof, if this can be done without embarrassment to the defendant.

"In many of the more recent cases, this view has obtained, as being at once the more rational, more conducive to the ends of justice, and consistent with the spirit and purpose of the Reformed Procedure; and it may safely be said that the true rule, resting upon principle, and supported by the weight of authority, now is, that where a plaintiff has a single right of recovery, that may rest upon one

ground or upon another, according to the facts to be shown by the evidence, and he can not safely foretell the precise nature and limits of the defendant's liability, to be developed upon the trial he may state his right of action variously, in separate causes of action.''

■ In the case at bar the question, as to whether there was one cause of action for the first assault and another separate cause of action for the false imprisonment, was very close to the line. According to plaintiff's testimony, he was first seized in the main room and generally pulled and hauled about, shaken up, and his arm bruised, and was then taken before the superior officer when he excused himself and went out to see a man who had witnessed the transaction between himself and the defendant and who returned with him to the room in which Cordes had taken him. After the plaintiff had made some attempted explanation, Cordes was directed to take him up to the jail, which he did. Whether the two were separate encounters each of which constitutes a cause of action, or whether they were only parts of one continued encounter, beginning at the desk of the defendant and ending in the jail, was a matter upon which counsel might reasonably have a doubt, and, as a matter of prudence, counsel for plaintiff chose to allege them as separate causes of action. If they were such, they were such as the statutes allowed to be joined, and, if they were two parts of a continuing transaction, the jury had it all before them and no harm was done from the fact that the case was presented by piece-meal pleadings. If plaintiff had sued for the false imprisonment, including in the complaint allegations of the battery which led to the imprisonment, it is altogether probable that

the court would have treated it as one transaction. The fact that he made two transactions of it in one complaint did not work an injustice to anybody. It being a matter within the discretion of the court, as shown by the authorities, we cannot say that the court abused its discretion in refusing to require plaintiff to elect, while an injustice would have been done plaintiff in denying either his right of recovery as to the assault and battery, or as to the alleged false imprisonment.

■ There is no question but that the treatment plaintiff received was unlawful as we gather it from the testimony. There is either a custom or practice which may be prescribed by ordinance, which runs in this wise: If a driver of an automobile parks it at a place where parking is prohibited, and the traffic officer finds it so parked and the owner of the car absent, instead of waiting until the owner returns to be arrested and taken to the police court, he puts a tag in the car notifying the owner to appear at the police court, keeping a duplicate of the tag to be retained at police headquarters. If the owner of the car answers the summons contained in the tag and appears, it is customary for him to pay $2 as bail, which is usually forfeited and the matter dropped. If he does not appear, he is notified in writing and upon his failure then to appear, a complaint is filed and he is arrested. While this procedure is not strictly inside of the law, it is a matter of convenience both as to the car owner and the police officer. It saves the officer the task of waiting around the parked car for the owner to appear, and thereby allows him to attend to other duties; and it saves the owner the humiliation of being arrested on the streets and taken as a prisoner to the police court. While the custom

has been followed universally, it has probably misled an officer into the belief that the tag authorizes him to arrest the delinquent without a warrant, which idea is erroneous. The officer has a right to arrest the party for a violation of a city ordinance when it is committed in his presence. Unless he has in his hands a warrant for such arrest, the seizure and imprisonment of the plaintiff for an offense not committed in his presence would be, in the absence of such warrant, wholly unlawful. No matter what the officer may have believed his rights to be, nor how good his intentions may have been, he had not such right until a warrant had been issued, unless the offense was committed in his presence.

■ We do not understand that the attorney for the defendant questions this view of the law, as the plea of the officer amounts only to a plea in mitigation of damages. While there was little or no evidence that the officer had any actual malice against the plaintiff, the jury were entitled, under the circumstances, to find that there was some actual damage. The plaintiff so testified, and the jury had a right to believe his testimony, and in that respect we find no reason to question the instructions of the court on its refusal to instruct as requested by the defendant.

■ The second assignment of error is based upon the refusal of the court to give the following instruction:

"Burden of proof in this case is upon the plaintiff to prove his allegations of damage by a preponderance of the evidence. You are not to presume that damages other than nominal damages resulted from the act of the defendant."

In view of the evidence of plaintiff that his arm was bruised until it was black and blue, this instruc-

tion would have been misleading to the jury and might have led them to believe that the court intended to instruct them that only nominal damages could have been inferred from the evidence.

Another assignment of error is based upon the following instruction given by the court:

"Under the law governing such cases there are two classes of damages one being known as general damages, and the other as punitive or exemplary damages. The term 'general damages' includes what we commonly speak of as actual damages. If the plaintiff was actually physically hurt by the assault and battery, such would constitute actual damages, and the law presumes actual damages, or injury to one's reputation, peace of mind, and nervous condition from false imprisonment. Starting with actual damages as the basis for your consideration, you are authorized to add to such actual damages as you may think the plaintiff entitled to recover, such sum as exemplary or punitive damages as you may deem proper as a penalty or punishment to the defendant for such wrongful act."

■ We take it that except in exceptional cases that injury to the feelings of a person or mental pain and anguish may be included in general damages, and to that extent the instruction properly stated the law.

In *Hays* v. *Houston G. N. R. R. Co.*, 46 Tex. 272, 279, we find the following:

"The jury are told to estimate the actual damages by the 'injuries sustained by the plaintiff in his person, his estate, and his feelings,' and are told that they may look to the plaintiff's situation in life, his reputation in the community, and any circumstances which may appear from the proof to have attended the (acts) complained of,' but not take into account 'the wealth of the defendant or the poverty of the plaintiff.' We think that the subject of the amount of actual damages was fairly placed before the jury."

*Phillips* v. *Hoyle,* 4 Gray (Mass.), 568, and in *Hearne* v. *De Young,* 132 Cal. 357, 360 (64 Pac. 576, 577) it is said:

"The remaining branch of actual damages embraces recovery for loss of reputation, shame, mortification, injury to feelings, etc., and while special damages must be alleged and proven, general damages for outrage to feelings and loss of reputation need not be alleged in detail, and may be recovered in the absence of actual proof, and to the amount that the jury estimates will fairly compensate plaintiff for the injury done."

■ It was error to instruct the jury that injury to plaintiff's reputation could be presumed from the fact of his unlawful imprisonment. In an industrious search of the authorities we have found no case that so holds. On the contrary, we find many authorities that hold that loss of reputation is a fact to be proved the same as any other fact in order to justify an award of damages on that account, and counsel for plaintiff in their carefully prepared brief in this case have cited no case holding to the contrary. The judge who tried this case probably inserted the word "reputation" by inadvertence, but that fact could make no difference as to its effect upon the minds of the jury. We can only repeat what was said in respect to a similar instruction given in the case of *Totten* v. *Totten,* 172 Mich. 579 (138 N. W. 262), as follows:

"The court, in his reasons for refusing a new trial, and counsel for plaintiff in their brief, admit, in effect, that there is no positive evidence of injury to good name and that the instruction upon that subject was erroneous, but state that it was an inadvertent and harmless error in view of the rest of the charge and the fact that able counsel at defendant's table,

listening to the charge, apparently did not notice it, and did not call the court's attention to the matter. It was clearly stated as an element of damages, and the first element mentioned in addition to physical suffering. The statement is nowhere contradicted or corrected in the charge and stands as a part of it. In view of the verdict, we cannot say that the jury did not take their cue from the instruction, and that it did not enter into and constitute a portion of their award.''

■ In the respect above noted, the charge was erroneous. There was very slight, if any evidence, that plaintiff had suffered a loss of reputation by reason of his ten minutes detention in jail; the fact that he was ''guyed'' by some of his friends in regard to it, being about the substance of it. But, even had it been stronger, it was error to add to it the weight of an erroneously supposed presumption of law. We find no error in the other instruction excepted to. Under all the circumstances, we feel that this is a case which, in spite of the single error above recited, should not be sent back for a new trial, but should be finally settled here. Our authority to do this is found in Section 3c of Article VII of the Constitution, which, in part, is as follows:

''If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the supreme court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as

decrees are now entered in equity cases on appeal to the supreme court.''

Here we have a case where the real defense is only in mitigation of damages. That the defendant seized plaintiff and imprisoned him for a brief period is clear and not in fact denied; that he inflicted some, though perhaps not serious injury to his person, we think is shown by the testimony. It is clearly a case of unlawful imprisonment effected by the use of physical force. That such conduct had the effect to humiliate plaintiff, and cause him to endure mental anguish in addition to slight physical injury, naturally follows. The arrest was unlawful, under the circumstances, and wholly without justification, but the plaintiff lost nothing of his acknowledged good reputation. His chief injury was to his feelings, and we think a judgment in his favor for the sum of $300 and costs will amply cover his damages, mental and physical, and perhaps serve as a warning to public officers hereafter to be careful not to become themselves wrongdoers.

It is ordered, therefore, that the judgment of the lower court be set aside and that this cause be remanded to the Circuit Court with directions to enter a judgment against defendant for $300 damages, and for the costs of the action in both courts, the costs on appeal to be taxed here.    MODIFIED.

COSHOW, C. J., and RAND and ROSSMAN, JJ., concur.