Argued January 15; affirmed March 4, 1941

# WRIGHT *v.* WHITE ET AL.

(110 P. (2d) 948, 135 A. L. R. 1)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND and ROSSMAN, Associate Justices.

*Ronald L. Reilly,* of Portland, for appellant.

*Rex Kimmell,* Assistant Attorney General (I. H. Van Winkle, Attorney General, Francis T. Wade, Assistant Attorney General, and Hodges & Gay, of Portland, on the brief), for respondents.

LUSK, J.

■■ When the state confers judicial powers upon an individual, it confers them with full immunity from private suits, 2 Cooley on Torts (4th Ed.) 426, § 312.

In the case of injury to an individual resulting from the exercise of such powers, it is said that the law will rather suffer a private mischief than a public inconvenience. Expounding the doctrine, Judge Cooley says (*ibid.*):

"In effect, the State says to the officer that these duties are confided to his judgment; that he is to exercise his judgment fully, freely, and without favor, and he may exercise it without fear; that the duties concern individuals, but they concern more especially the welfare of the State, and the peace and happiness of society; that if he shall fail in the faithful discharge of them he shall be called to account as a criminal; but that in order that he may not be annoyed, disturbed, and impeded in the performance of these high functions, a dissatisfied individual shall not be suffered to call in question his official action in a suit for damages. This is what the State, speaking by the mouth of the common law, says to the judicial officer."

This principle of immunity has been extended to include the acts of ministerial officers: *Spalding v. Vilas*, 161 U. S. 483, 40 L. ed. 780, 16 S. Ct. 631, *Cooper v. O'Connor*, 99 Fed. (2d) 135, 118 A. L. R. 1440, (where, among others, agents of the Federal Bureau of Investigation engaged in prosecution of violations of the banking laws were held to be protected); and to prosecuting attorneys, *Watts v. Gerking*, 111 Or. 641, 678, 222 P. 318, 228 P. 135, 34 A. L. R. 1489; 3 Restatement Torts, 392, § 656. It extends also, says Judge Cooley (*ibid.*), "to military and naval officers in exercising their authority to order courts-martial for the trial of their inferiors, or in putting their inferiors under arrest preliminary to trial; and no inquiry into their motives in doing so can be suffered in a civil suit." See, to the same effect, 1 Chitty on Pleadings, 89.

The first case in which the rule of immunity was invoked in behalf of an officer of the naval or military establishment is *Sutton v. Johnstone*, 1 Eng. Rul. Cas. 765 (1785). That was an action against the defendant for having, as commanding officer of the fleet, maliciously and without reasonable and probable cause, brought the plaintiff to a court-martial for breach of duty and disobedience of orders. The plaintiff recovered a judgment, and appeal therefrom was heard by Lord Mansfield and Lord Loughborough who rendered an opinion (acknowledged to have been written by Lord Mansfield), in which the judgment was reversed on the ground that the facts sufficiently showed the existence of reasonable and probable cause. The question of immunity, which had been much urged, was discussed, and the view expressed that the action would not lie. Considerations of public policy, the necessity of maintaining discipline in the armed forces, and the fact that should officers be subjected to such actions they would be deterred from performing their duty in enforcing discipline, were thought to support this view.

The decision, however, was not put upon that ground since there was no precedent, and it was said that it should be settled by the highest authority. Referring to the want of precedent, Lord Mansfield observed that "till this experiment it never entered the head of any man to bring such an action." On appeal to the House of Lords, the judgment of Lord Mansfield and Lord Loughborough was affirmed, but solely on the ground that the facts showed the existence of reasonable and probable cause. The question of immunity was not discussed.

In *Dawkins v. Lord Rokeby,* 4 F. & F. 406, the plaintiff, a captain in the Coldstream Guards, sued his superior officer for false imprisonment, malicious prosecution, and conspiracy to cause the plaintiff's removal from the army. The plaintiff was nonsuited, the court at *nisi prius* ruling that the facts showed reasonable and probable cause, and, also, on the authority of *Sutton v. Johnstone,* that the action would not lie.

Later, Captain Dawkins brought an action for libel against Lord Paulet based on a letter addressed by the defendant to the Adjutant-General of the army reflecting on the character and competency of the plaintiff as an officer, and requesting that his conduct might be referred for investigation by a court of inquiry—the alleged libel being a part of the same transaction which gave rise to the action against Lord Rokeby. *Dawkins v. Lord Paulet,* 5 L. R. Q. B. 94; 35 L. J. Q. B. 53. The case was heard on demurrer to the replication, which raised the question of immunity, by Cockburn, C. J., Mellor, J., and Lush, J., and, largely on the authority of Lord Mansfield's dictum in *Sutton v. Johnstone,* the demurrer was sustained and judgment pronounced for the defendant, the chief justice dissenting. In addition to reasons of public policy demanding the observance of the principle of immunity in such cases, Mellor, J., and Lush, J., called attention to one of the Articles of War, reading:

"If any officer shall think himself wronged by his commanding officer, and shall upon application made to him, not receive the redress to which he may consider himself entitled, he may complain to the general commanding-in-chief of our forces, in order to obtain justice; who is hereby required to examine into such complaint, and either by himself, or by our secretary of state for war, to make his report to us thereupon in order to receive our further directions."

They held that the plaintiff's mode or measure of redress was that which was specified in this article, and that, though the remedy was imperfect, because no pecuniary compensation was given to the injured party, yet the plaintiff had no reason to complain, for, to quote from the opinion of Lush, J., "he has all which the law military, to which he engaged to submit when he entered the service, entitles him to have. The same code creates both the right and the remedy, and this court cannot add to the one or to the other."

We have been referred to no other decisions bearing directly on the question. Counsel for plaintiff have cited none which are opposed. He has argued that *Dawkins v. Paulet* was an action of libel and decided on the basis of rules of privilege peculiar to that action; but the opinions of the majority judges clearly show no such narrow ground of judgment; on the contrary, that they were but applying to the acts of officers of the army and navy in the enforcement of military discipline the same rule of public policy that gave rise to the immunity of judges—an immunity established "to secure their independence, and to prevent them being harassed by vexatious actions." (Opinion of Mellor, J., 5 L. R., p. 117). It is also asserted that *Sutton v. Johnstone* resulted in a decision by the House of Lords awarding damages to an inferior officer against his superior officer in an action for malicious prosecution; but this statement does not accord with the report of the case. That was the result in the trial court, which refused to disturb the verdict; but the judgment of Lord Mansfield and Lord Loughborough in the Exchequer Chamber, reversing the lower court, was affirmed in the House of Lords.

The rule first announced by Lord Mansfield as dictum and later adopted as judicial decision has stood undisturbed for more than one hundred and fifty years in this country and England; and, apparently, to refer again to Lord Mansfield's language, it has never entered the head of any one in the United States to bring such an action, or, at any rate, to test in an appellate court the right to maintain it. We think, as indicated by the quotation we have taken from Cooley's text, that the dictum has been incorporated into the common law of this country. And we are of the opinion that it is quite as essential to the fearless and independent exercise of the authority conferred upon officers of the army and navy to enforce military discipline that they be free from the apprehension of vexatious suits grounded upon their official acts, as it is that a like immunity should be enjoyed by the judges of our civil courts. If it were otherwise, there would be every reason to fear that the discipline in the military establishment would be gravely affected.

■ Furthermore, Article 121 of the Articles of War of the army of the United States, which are the governing law for the National Guard of this state (§ 103-204, O. C. L. A.) provide as follows:

"Any officer or soldier who believes himself wronged by his commanding officer, and, upon due application to such commander, is refused redress, may complain to the general commanding in the locality where the officer against whom the complaint is made is stationed. The general shall examine into said complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, transmit to the Department of War a true statement of such complaint, with the proceedings had thereon."

This provision is similar in language and identical in substance with the section of the Articles of War of the British army which the court held in *Dawkins v. Paulet* should be taken as prescribing the measure and mode of redress to which an officer was entitled for wrong done him by his commanding officer, and we think, so far as the present question is concerned, that no different effect should be given the provision by this court.

The plaintiff contends that even though the defendants are entitled to the protection of the immunity rule in respect of acts done by them in their official capacity and within the scope of the authority conferred upon them, the pleadings present issues of fact as to these matters; it is urged that the answer alleges, and the reply denies, that the acts complained of were performed by the defendants in the course of official duty, and that the answer alleges and the reply denies that the court-martial was called by order of the Governor and the charges were referred to the Judge Advocate General for trial before the general court-martial by order of the Governor.

We premise the discussion of these questions by noting that the reply does not deny categorically the affirmative allegations of the answer, but with the qualification "except as alleged by plaintiff in his complaint"; so that, if upon a fair construction of the complaint it appears that the plaintiff has himself alleged the facts as to which it is now said there are issues made by the pleadings, then his position in this regard is untenable.

■■ By § 103-2,112, O. C. L. A., it is provided that general courts-martial may be convened by orders of the President or the Governor. It is conceded that unless the court-martial here involved was so convened it had

no jurisdiction to try the plaintiff. The Manual for Courts-Martial, U. S. Army (1928) p. 7, so provides. If, as the plaintiff asserts, he not only has not alleged in his complaint, but has denied, that the court-martial was convened by order of the Governor; if, further, he charges that all that was done by the defendants was done by them in their private capacities and not in the discharge of their duties as officers, it is not clear to us how he is in any position to maintain an action for malicious prosecution, for the foundation of this action is the prior institution of a criminal proceeding: *Shaw v. Moon*, 117 Or. 558, 245 P. 318, 45 A. L. R. 600; *Nally v. Richmond*, 105 Or. 462, 209 P. 871; 3 Restatement, Torts, §§ 653, 654; 38 C. J., Malicious Prosecution, 387, § 6. The cases cited from this court offer apparent contradiction on the question whether the rule is satisfied where the officer issuing process acts in excess of his jurisdiction; but, without attempting to reconcile these decisions here, we would be prepared to hold that if the complaint means that the defendants acted merely as private individuals and that the court-martial was not convened by order of the governor there would not have been the semblance of a criminal proceeding and a cause of action for malicious prosecution would not be stated. It would be no different than charging that John Smith accused another in writing of stealing and Thomas Brown directed the first twelve men he met upon the street to try the accused.

But we do not put the decision upon that ground because we do not consider that the complaint will bear that interpretation.

Before analyzing the pleadings we shall refer briefly to some statutory provisions in the light of which the pleadings are to be interpreted.

The statute provides for courts-martial of the National Guard of three kinds—namely, general, special and summary, § 103-2,111, O. C. L. A.; that, as already stated, general courts-martial may be convened by orders of the President or the Governor, § 103-2,112, *ibid*; that courts-martial for the National Guard shall have power to try all officers and enlisted men of the National Guard, § 103-2,116; that for each general or special court-martial the authority appointing the court shall appoint a trial judge advocate and a defense counsel, and for each general court-martial one or more assistant trial judge advocates and one or more assistant defense counsels when necessary, § 103-2,123.

■ The complaint shows that the defendants were the superior officers of the plaintiff in the Oregon National Guard, the defendant White having the rank of major general as well as being Adjutant General of the state, and the defendant Wooten having the rank of major and in addition being a subordinate in the office of the Adjutant General. We know judicially that the Adjutant General is the principal staff officer of the "organized militia of the state", § 103-201, O. C. L. A.

■ It was within the scope of the authority of the defendant Wooten to prefer the charges (the specifications of which show violations of the Articles of War therein referred to: Manual for Courts-Martial, *ibid.*, p. 223, 224), and it was within the scope of the authority of the defendant White to appoint a general court-martial on the order of the Governor and to refer the charges for trial to the Judge Advocate General. We do not understand that there is any dispute about these matters.

The complaint alleges that the defendants instigated and prosecuted a "criminal proceeding" against the

plaintiff; that the defendant White caused "a general court-martial to be appointed"; and that this general court-martial "duly convened in the City of Portland"; and attached to and made a part of the complaint as exhibits are copies of the charge sheet signed by the defendant Wooten as "Major Infantry—State Staff", of the reference for trial signed by "George A. White, The Adjutant General" with the recital "By order of the Governor", and of the order appointing a court-martial, similarly signed and bearing a like recital, as well as the word "Official".

The so-called charge sheet is in the form prescribed by the Manual for Courts-Martial, *ibid.*, p. 16.

■ The order appointing a court-martial complies with the statutory requirement for the appointment of a trial judge advocate and a defense counsel.

■ There being nothing in the complaint to the contrary, the capacities in which the defendants acted are shown by the official titles appearing after their names—as much so as if a district attorney were the defendant and a copy of the indictment bearing his name and official title were made a part of the complaint.

Except that the plaintiff has not in so many words alleged that the defendants acted in the line of their duty as officers of the Guard everything in the complaint and the exhibits attached to the complaint shows that they did so act. The pleading will bear no other construction. The allegation that the defendant Wooten commenced a criminal proceeding against the plaintiff by making the charge contained in the charge sheet is inconsistent with any other interpretation, for the defendant Wooten, a mere private individual, while he might commit a libel by signing and publishing the writ-

ten charges, could not in that capacity and in that way commence a criminal proceeding; but he could do so in his capacity of superior officer to the plaintiff.

There remains then but the one question: Is an issue made by the pleadings as to whether the court-martial was convened by order of the Governor? Under the statute, as previously stated, only that official or the President is invested with the authority to convene a general court-martial; if not so convened, an indispensable prerequisite to jurisdiction is wanting. Manual for Courts-Martial, *ibid.*, p. 7.

 The answer to this question depends on the effect to be given to the recital in Exhibit B, "By order of the Governor". The plaintiff says that the recital is no part of the complaint, and invokes the rules that an exhibit will not serve the purpose of supplying an essential averment in a pleading and that the facts recited in the exhibit are not to be taken as alleged by the pleadings. These are well established rules in this state. *Malheur County v. Carter,* 52 Or. 616, 98 Or. 489; *McLeod v. Lloyd,* 43 Or. 260, 71 P. 795, 74 P. 491; *Caspary v. Portland,* 19 Or. 496, 24 P. 1036, 20 Am. St. Rep. 842; *Kerns v. Union County,* 123 Or. 103, 261 P. 76. For example, in an action against sureties on an undertaking for bail a copy of the undertaking made an exhibit to the complaint and reciting that the defendant in the criminal case was charged with crime, and examination had, and that he was held to answer to the charge, will not supply the omission from the complaint of allegations that these things actually occurred. *Malheur County v. Carter,* supra. Likewise, attaching a copy of a complaint in another case to a pleading is not effective to make the allegations of the complaint a part of the pleading; but merely serves the purpose of showing that

a complaint had been filed, stating that certain facts exist. *Kerns v. Union County*, supra. So, in the instant case, the plaintiff, by making a copy of the charge sheet a part of the complaint, cannot be held to have alleged that the charges were true, but merely that those were the charges preferred.

But, as we think, the question here is governed by different considerations. Granting validity to the plaintiff's claim that he can maintain this action even though the court-martial was not convened by order of the Governor or of the President and therefore was without jurisdiction to try the plaintiff, we are of the opinion that the complaint, properly construed, must be taken as averring that the court-martial was so convened, for one office of an exhibit to a pleading is that it may be resorted to in order to explain and make definite the allegations of the pleadings. *Lorenz Co. v. Gray*, 136 Or. 605, 612, 298 P. 222, 300 P. 949; *Mason v. Williams*, 194 S. C. 290, 9 S. E. (2d) 537; *Brooks v. American National Bank of Beaumont*, (Tex. Civ. App.) 103 S. W. (2d) 246; 49 C. J., Pleading, 617, § 882. Without Exhibit B, the complaint is not definite upon the matter now in question. It does not allege that the court-martial either was, or was not, convened as required by the statute, but is wholly silent on the subject. The exhibit, with its recital over the signature of the Adjutant General of the state, "By order of the Governor", has the effect of removing that uncertainty, and displays the character of the order issued by the defendant White in appointing the court-martial—that is, an order made by him under proper authority.

In other words, we think that if, as the plaintiff contends, any rule of immunity, which otherwise would protect the defendants, would be lost to them if the court-

martial lacked jurisdiction to try the plaintiff, he has failed to allege facts in his complaint showing such want of jurisdiction; and that, on the contrary, the complaint, read and interpreted by the aid of the exhibits, discloses that the defendants acted in the line of their duty and within the scope of their authority and that the court-martial was regularly and properly convened.

The complaint therefore did not state a cause of action, and, since the qualified denial of the answer raises no material issue, the circuit court's decision of the motion for judgment on the pleadings was right.

It results that the judgment is affirmed.