Argued June 5, reargued December 9, 1964, affirmed
May 19, 1965

# UTLEY *v.* CITY OF INDEPENDENCE et al, HARDY

402 P. 2d 91

*Myron L. Enfield,* Salem, argued the cause for appellant. With him on the briefs were Geo. A. Rhoten and Rhoten, Rhoten & Speerstra, Salem.

*John Daniel Callaghan* and *Norma J. Paulus,* Salem, argued the cause for respondent. With them on the brief were William G. Paulus and Paulus & Callaghan, Salem.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

GOODWIN, J.

This is an action for false arrest. The plaintiff was arrested upon a warrant issued by the defendant Hardy, who was the city recorder of Independence. Hardy issued the warrant without a sworn complaint having been filed. All defendants except Hardy were granted a nonsuit. The jury awarded the plaintiff $7,500, and Hardy appeals.

Because under the city charter the city recorder

also serves as municipal judge, Hardy claimed a defense of judicial immunity. The trial court ruled that Hardy was not protected by judicial immunity because he had acted without authority. The court submitted only the issue of damages to the jury.

Although a number of collateral issues were urged at trial and on appeal, the most significant issue in this case is whether or not the doctrine of judicial immunity will protect a judicial officer who, without a sworn complaint charging the person with an offense, orders the arrest of such person.

The plaintiff concedes that the judge of a municipal court duly created by a city charter is clothed with immunity from personal liability while in the performance of his authorized judicial business. Immunity also protects the judge when he acts in a matter in which his jurisdiction is questionable. In *Cottam v. Oregon City*, 98 F 570 (CC D Or 1899), immunity was said to apply unless a clear absence of jurisdiction is at once apparent to the ordinary understanding. A similar rule is discussed in 2 Harper and James, The Law of Torts, 1643, § 29.10 (1956).

The city of Independence has an ordinance, the validity of which is not before us, which provides that persons delinquent in the payment of sewer assessments will be subject to prosecution which may result in a fine or imprisonment. The plaintiff fell five months behind in his payments and, consequently, owed the city five dollars.

At the time that the plaintiff was arrested, Hardy was the custodian of the city's records showing the status of sewer assessments. As recorder, Hardy thus had personal knowledge of the plaintiff's delinquency.

On April 23, 1962, Hardy sent a demand letter to the plaintiff. The letter, a mimeographed form, ad-

vised the plaintiff of his delinquency and of the penalty provisions of the ordinance. A month went by. The charges were not paid.

Purporting to act in his judicial capacity, but without a written complaint having been filed, Hardy issued a warrant for the plaintiff's arrest. The plaintiff was arrested.

The plaintiff brought this action on the theory that the issuance of a warrant of arrest without a sworn complaint being on file was an act wholly outside the jurisdiction of the municipal court. We need not consider whether or not immunity would shelter the acts of a judge who, within his jurisdiction, acted in violation of the due-process clause of the Fourteenth Amendment. (See *Giordenello v. United States,* 357 US 480, 78 S Ct 1245, 2 L Ed2d 1503 (1958).) It is necessary only to decide whether the action of the recorder (municipal judge) in issuing the warrant in the instant case was an action wholly outside the jurisdiction of the court or an action within the colorable jurisdiction of the court. To answer these questions, we must look to the sources of the jurisdiction of the municipal judge.

Section 20 of the Charter of the City of Independence designates the city recorder as the *ex officio* municipal judge and provides:

"* * * The municipal judge shall have authority to issue process for the arrest of persons accused of an offense against the ordinances of the city * * *. When not governed by ordinance or this charter, all proceedings in the municipal court for the violation of a city ordinance shall be governed by the general laws of the state governing justices of the peace and justice courts."

In defining the general provisions and proceedings prior to judgment in Justices' Courts, the Oregon Revised Statutes include the following:

"Upon the filing of the complaint, the justice shall issue a warrant of arrest for the defendant named therein." ORS 156.050.

ORS 133.040 provides as follows:

"When complaint is made to a magistrate of the commission of a crime, the magistrate shall examine the informant on oath, reduce his statement to writing, cause the same to be subscribed by him and take the depositions of any witnesses that he produces in support thereof."

In the case of a search warrant, this court has held that the requirement of a sworn statement was jurisdictional. The issuance of a search warrant without an affidavit thus was not the erroneous performance of an authorized judicial function, but was the performance of a wholly unauthorized act by one having no jurisdiction to act. *Shaw v. Moon et al.*, 117 Or 558, 245 P 318, 45 ALR 600 (1926). Under statutes very similar to our own, a Minnesota municipal judge similarly was held liable for issuing a warrant without first having a complaint reduced to writing and subscribed as required by law. *Hoppe v. Klapperich*, 224 Minn 224, 28 NW2d 780, 173 ALR 819 (1947).

It has been contended that the present case is analogous to a case under ORS 133.340, which authorizes a magistrate to command any person to arrest an offender who commits a crime in the presence of the magistrate. In the instant case, it is not contended that the plaintiff committed a crime in the presence of the defendant. However, it is argued that the situations are alike because in both situations the magistrate has personal knowledge of the offense.

One purpose of an oath, affirmation, or complaint is to guarantee that the officer who issues the warrant is relatively sure that an offense has been committed. However, a sworn complaint, particularly when memorialized in writing, also has other legal consequences. The complaint records the statements and names of the complaining witnesses. It creates a record. It provides a formal and visible basis for governmental action. Upon this record, the complaining witness may later be held for false statements. Furthermore, the knowledge that it is necessary to swear to a complaint, and that there may be later liability for swearing falsely, may serve to inhibit complaints.

■■ The power of a magistrate to order the assistance of officers to maintain order, either in his own court, or outside court, in the event of a riot or disturbance, includes the power to order an arrest for an offense committed in the presence of the magistrate. *Frazier v. Moffatt*, 108 Cal App2d 379, 239 P2d 123 (1952). The power to order an arrest for an offense committed in the presence of the magistrate, however, is a power necessary to the judicial office. This exception to the general rule that no warrant shall issue without an oath or affirmation is grounded in the historic necessity for preventing breaches of the peace. No reason has been suggested why a judge should be authorized to issue warrants without a formal complaint in any other circumstances.

The warrant of arrest, signed by the recorder, shows that Hardy must have been aware of the correct procedure. The warrant begins:

"Complaint upon oath having been made before me that the Crime of    failure to pay monthly

sewage charge under Ordinance No. 790 has been committed * * *."

■ We hold that, except for those cases covered by ORS 133.340, when a judicial officer issues a warrant without a sworn complaint having been made, there is no judicial business properly before him, and he acts as a private citizen. The unauthorized action is not, therefore, merely the erroneous exercise of colorable judicial power, but it is the usurpation of judicial power, and is not protected by immunity. *Shaw v. Moon,* supra; *Hoppe v. Klapperich,* supra.

While the defense of immunity is not available in this action, two other assignments of error require discussion.

The trial court permitted the jury to consider an allegation, made during the trial and added to the complaint as an amendment, to the effect that the wrongful arrest caused the plaintiff to suffer a loss of employment. Both the ruling which permitted the plaintiff to add the allegation of damage to his pleading and the ruling which permitted the allegation to go to the jury are challenged.

■ The allowance of the amendment was discretionary. We cannot say, as a matter of law, that the trial court abused its discretion in allowing the plaintiff to amend. There was some evidence to the effect that the plaintiff may have lost an opportunity for employment because of the arrest. That evidence was for the jury to consider.

Another assignment of error, however, challenges the sufficiency of certain evidence to go to the jury. Plaintiff alleged in his complaint, and the jury was allowed to consider, that the plaintiff's reputation for honesty and integrity was adversely affected by the arrest. On this appeal, the defendant Hardy contends

that injury to plaintiff's reputation, as distinguished from injury to his feelings, was not proved. See *Paget v. Cordes*, 129 Or 224, 277 P 101 (1929).

The plaintiff contends, however, that an inference that the arrest caused a loss of reputation may be drawn from the way in which one employer explained why he would not hire the plaintiff:

> "I think until the heat goes off around here you better try and get something somewhere else because I just don't feel like taking a chance."

In connection with the issue of loss of employment, which did go to the jury, and from which the plaintiff seeks to have an inference drawn concerning a supposed loss of reputation, it should be pointed out that the evidence in this case is replete with proof that the plaintiff was unpopular at the city hall. (He had terminated his services as a city employe under acrimonious circumstances which may have had something to do with the decision to bring about his arrest, but the motive of the defendant is not before us in this appeal. The defense is primarily grounded upon immunity.) The unpopularity of the plaintiff with his former employers, in any event, was not shown to have been related to the plaintiff's general reputation in the community. If the loss of employment were the only fact upon which the inference of loss of reputation were to be drawn, we would be forced to hold that the two supposed losses were unconnected by evidence, and that it would have been error to submit loss of reputation as a separate element of damages.

There is, however, other evidence.

The plaintiff swore that he was followed, repeatedly, by a police car. He then swore:

> "Well following my arrest if I walked down

the street people would be afraid to talk to me. They would duck in doors and everything else and several business men I would stop and talk to and talk to me and they'd watch up and down the street and the police car would come down the street and they'd say 'Excuse me' and took in and run in the place of business and say 'I don't dare be seen talking to you.' "

■ Unless this court can say as a matter of law that the foregoing testimony was wholly hallucinatory, or that the inference that the inhabitants of the city had been caused to change their opinion of the plaintiff by reason of the arrest was so preposterous that no reasonable jury could indulge in such an inference, we are bound by Oregon Constitution, Art VII, § 3 (Amended) to refrain from reviewing the weight to be given such testimony. This court is not permitted to decide jury questions. Since we cannot say that the record was devoid of evidence to support the plaintiff's allegations, we are bound by the verdict.

Finally, it is urged that hearsay was improperly received in evidence. When the plaintiff was testifying about a conversation between himself and a potential employer, he was permitted to testify, over objection, to certain words and phrases which he attributed to the employer. If the language attributed to the employer had been offered to prove the truth of whatever factual assertions the reported language may have contained, there would have been, of course, a hearsay problem. See McCormick, Evidence 460, § 225 (1954).

■ In this case, however, the statements attributed to the employer, e.g., "I think until the heat goes off around here you better try and get something else * * *," were not offered to prove that the "heat was

on" or any other fact expressed or implied in that statement and similar statements quoted by the plaintiff. The statements were offered, not to show that what may have been said in them was factually accurate, but that the statements had been made. The fact that the statements had been made, in itself, tended to prove the fact in issue. The issue was whether or not the plaintiff had been denied an opportunity for employment because of the effect of the arrest and ensuing controversy upon a specific employer. As evidence tending to show the effect of the events complained of, the statement was not hearsay. *Hryciuk v. Robinson,* 213 Or 542, 566, 326 P2d 424 (1958). There was no error in receiving the plaintiff's testimony concerning the conversation objected to.

Affirmed.

DENECKE, J., dissenting.

The majority opinion appears to be based upon the premise that judicial immunity is a defense even if the judge acts without authority or without jurisdiction, as long as the judge has any reasonable belief that he is acting within his authority or jurisdiction. I agree with such premise. However, I disagree with the majority's decision that, as a matter of law, no reasonable judge could believe that he had the authority or jurisdiction to issue the warrant to arrest plaintiff.

The reason for judicial immunity is to allow judges to act freely and independently, particularly in difficult cases, without fear of having to pay civil damages in the event it is later determined that they acted without authority or jurisdiction. *Wright v. White,* 166 Or 136, 143, 110 P2d 948, 135 ALR 1 (1941). A judicial vacuum might exist if the insidious in-

fluence of liability for civil damages were present every time a judge was asked to act and his authority or jurisdiction was doubtful or questioned. On the other hand, there is no legitimate reason to protect a judge who acts arbitrarily, knowing he has no authority.

The rule that would best serve judicial independence would be that immunity would be granted in any instance in which the judge acted in the belief, however mistaken, that he was authorized to act. This, however, would require the application of a subjective standard,—what was the particular judge thinking? This is difficult; therefore, an objective standard is adopted,—could any reasonable judge have believed he had the authority to act? If no reasonable judge could, we assume that the particular judge knew he was acting without authority. Such an objective standard will protect all judges who have made an honest but erroneous decision, except those who are particularly foolish or incompetent.

The defendant is not a lawyer. In Oregon a substantial amount of judicial work must be done by non-lawyers. It is just as desirable to have these laymen judges operate free from the fear of liability for civil damages as it is for the legally trained judges. We have previously held that judicial immunity extends to judges of courts of limited jurisdiction, in which nonlawyers frequently sit, as well as to courts of general jurisdiction. *Shaw v. Moon,* 117 Or 558, 562, 245 P 318, 45 ALR 600 (1926).

Inasmuch as it is independence of both lawyer and lay judges which we are trying to preserve by the shield of judicial immunity, the test of whether the judge is reasonable in believing, erroneously, that he has the authority to act, should, in the case of a non-

lawyer judge, become what a reasonable nonlawyer judge could believe.

Freedom from arrest or search, under the color of a warrant issued without judicial authority is a basic constitutional right. However, this court and others have held that this right must yield to the principle of judicial immunity. In *Siverson v. Olson,* 149 Or 323, 40 P2d 65 (1935), a search warrant was issued contrary to the constitutional requirement that it "particularly describe[ing] the place to be searched." This court held the judge issuing the invalid warrant was immune from civil damages because he had made the decisoin to issue the warrant upon some colorable basis; that is, the insufficient description of the place to be searched which was contained in the affidavit.

Perhaps the majority decision is intended as a prophylactic measure,—to cause judges, particularly lay judges, to be very careful that all constitutional and statutory requirements have been met before issuing warrants. This is a laudable purpose, but I doubt one that should prevail over that granting immunity to judicial action taken under the reasonable belief that there is proper authority to act. This is especially true when there has been no previous decision by this court on the jurisdictional issue involved.

*Shaw v. Moon,* supra, is factually distinguishable from the present situation. According to the allegations in the complaint in *Shaw v. Moon,* the magistrate knew of no facts, by affidavit or otherwise, to justify the issuance of a warrant, but acted in conspiracy with the codefendant in order to deprive the plaintiff of his property. This is no decision that if the magistrate has the complete and perhaps sole knowledge

of the facts which would authorize an arrest, he must nevertheless file a written, sworn complaint.

The majority states that the complaint must be in writing. I subscribe to this; however, that requirement was not clearly known prior to the majority opinion in this case. The statutes cited by the majority stating that the complaint shall be in writing do not indicate whether they set forth the exclusive procedure. These same statutes were in effect when this court stated in *Ex Parte Jack Wessens,* 89 Or 587, 589, 175 P 73 (1918), "It is not necessary under our statute that the accusation before a magistrate be reduced to writing."

Neither the Oregon nor the Federal Constitution explicitly requires a writing. Other jurisdictions have held that a warrant can be issued upon oral testimony. *Sparks v. United States,* 90 F2d 61, 64 (6th Cir 1937); *Clark v. Hampton,* 163 Ky 698, 174 SW 490 (1915); *People v. Clement,* 72 Mich 116, 40 NW 190 (1888).

The majority also holds that there must be a *sworn* complaint. The principal purpose of an oath is to present facts in a trustworthy form in order that a magistrate can determine the question of probable cause. *Giordenello v. United States,* 357 US 480, 78 S Ct 1245, 2 L ed2d 1503, 1509 (1958). This is the command of the constitution and ordinarily is essential. However, in the unique situation present in this case, it seems incongruous, and a Dickens legalism, to require the defendant in his capacity as city recorder to make a sworn statement to himself as city judge. This formalism cannot add any element of trustworthiness.

Contrary to the reasoning of the majority, I find a close analogy in ORS 133.340, which authorizes a magistrate to command any person to arrest an offender who commits a crime in the presence of the

magistrate. In such circumstances no written or sworn complaint is necessary, despite the constitutional requirement. One apparent reason for this exception to the constitutional requirement is that an oath would be superfluous because the magistrate knows the facts and does not need sworn information from someone else.

*Frazier v. Moffatt*, 108 Cal App2d 379, 239 P2d 123 (1952), illustrates the scope of this authority. The defendant Justice of Peace was eating lunch in a restaurant. According to him, another customer was yelling. The justice called police and ordered them to arrest the customer. The customer sued the justice for false imprisonment. The court held the justice was immune. He ordered an arrest without a warrant for a crime committed in his presence.

The constitutionality of ORS 133.340 may not be free from doubt, but the defendant judge and his legal advisor would be entirely reasonable in relying upon it by analogy①.

In this case the facts are that plaintiff was in violation of the city ordinance and, therefore, was subject to arrest. The jury could have found that defendant nonlawyer judge asked the city attorney how to proceed and was advised that inasmuch as the defendant personally knew the facts creating the right of arrest, it would not be necessary for the defendant or anyone else to file a written, sworn complaint. In support of the city attorney's advice and the defendant's action is the statement of this court that it is not necessary to reduce the complaint to writing, *Ex Parte Jack Wessens*, supra, and ORS 133.340,

---

① Clark v. Hampton, supra (174 SW 490). Whether defendant consulted the city attorney before issuing the warrant is disputed.

which under very similar circumstances authorizes a magistrate who by personal observation knows the facts authorizing arrest to order an arrest without a warrant. I would hold the defendant acted reasonably in believing he was authorized to act as he did and, therefore, he is immune from liability.