Peggy Jane O'NEIL, Plaintiff-Appellant,

v.

CITY OF LAKE OSWEGO, a municipal
corporation et al., Defendants,

and

William C. Martin and Robert M.
Coleman, Defendants-Appellees.

Peggy Jane O'NEIL, Plaintiff-Appellee,

v.

CITY OF LAKE OSWEGO, a municipal
corporation et al., Defendants,

and

William C. Martin, Defendant-Appellant.

Nos. 79–4123, 79–4124.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1981.

Decided April 20, 1981.

Jerome E. LaBarre, P.C., Bruce MacGregor Hall, P.C., Glasgow, La., Barre & Kelly, Portland, Or., for plaintiff-appellant.

Samuel C. Justice, Portland, Or., argued, James H. Gidley, Cosgrave & Kester, Portland, Or., on brief, for defendants-appellees.

Before CHOY, KENNEDY and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Plaintiff prevailed in district court in a civil rights action against an Oregon pro tem municipal judge who found her in con-

tempt. We reverse on the basis of judicial immunity. On plaintiff's cross-appeal, we also reverse and remand the issue of attorney's fees recovered from a co-defendant.

## I

On February 6, 1976, plaintiff Peggy Jane O'Neil was cited for driving without a license in Lake Oswego, Oregon. After she failed three times to appear at scheduled court hearings, a bench warrant was issued for her arrest. On June 17, 1976, a Lake Oswego police officer stopped O'Neil for speeding and then arrested her on the bench warrant. While assisting with the arrest, police officer Coleman injured O'Neil.

A few hours later, O'Neil was brought before pro tem municipal judge Martin. Martin arraigned her for driving without a license, speeding, and resisting arrest. O'Neil pleaded not guilty to these charges and Martin set them for trial at a later date. Then, apparently mistaking the bench warrant before him for a charge of contempt of court, Martin told O'Neil that he would hold her in contempt unless she could explain her failure to appear at the court hearings scheduled for the February 6 citation. When O'Neil's explanation failed to satisfy him, Martin convicted her of contempt and sentenced her to two days in jail.

O'Neil sued Coleman and Martin in federal district court under 42 U.S.C. § 1983, alleging that Coleman had wrongfully injured her neck and that Martin had illegally sentenced her to jail. By stipulation of the parties, the case was tried before a magistrate with a jury. The jury returned a verdict against Coleman for $433.70 compensatory damages and $200 punitive damages and against Martin for $3,500 compensatory damages and $1,000 punitive damages. The district judge entered judgment in those amounts.

After the verdict, O'Neil requested attorney's fees in the amount of $18,076.50, based on 236.7 attorney hours at $75 per hour and 16.2 law clerk hours at $20 per hour. Without stating its reasons for so ruling, the trial court awarded $700 attorney's fees against Coleman and $5,700 against Martin.

Martin appeals the judgment denying his defense of judicial immunity. O'Neil cross-appeals the denial of her full request for attorney's fees. We reverse the judgment against Martin on the basis of judicial immunity and reverse and remand the award of attorney's fees against Coleman to allow the district court to specify the legal and factual basis for the award.

## II

Under Oregon law, a court cannot find a defendant guilty of contempt committed outside the court's immediate view in the absence of an affidavit outlining the facts of the contempt. Or.Rev.Stat. § 33.-040; *State ex rel. Oregon State Bar v. Lenske*, 243 Or. 477, 405 P.2d 510, 512 (1965), *cert. denied*, 384 U.S. 943, 86 S.Ct. 1460, 16 L.Ed.2d 541 (1966). *See Utley v. City of Independence*, 240 Or. 384, 402 P.2d 91, 94 (1965).[1] Martin concedes that no affidavit existed; accordingly, he acted in excess of jurisdiction. Nonetheless, he claims that judicial immunity[2] protects him from liability for his actions under § 1983.[3]

---

1. *Utley* holds that an Oregon judge who issued a warrant without the sworn complaint required by Or.Rev.Stat. § 133.040 enjoys no immunity in a state tort action for false arrest. Although the parties vigorously debate its application to the present case, we need not consider *Utley*. Apart from the fact that *Utley* arose under a different provision of Oregon law, a federal court hearing a § 1983 action is not concerned with the immunity defense that defendant would enjoy in a comparable state action. *Ferri v. Ackerman*, 444 U.S. 193, 198, 100 S.Ct. 402, 406, 62 L.Ed.2d 355 (1979).

2. Martin may invoke judicial immunity despite his status as a pro tem municipal court judge. Oregon law confers powers on pro tem judges equivalent to those permanent judges enjoy. *See* Or.Const. art. VII, § 2(a)(2); Or.Rev.Stat. § 1.270. Moreover, judicial immunity extends to all judges. *See Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974) (justice of the peace).

3. Judicial immunity is applicable to § 1983 suits. *Pierson v. Ray*, 386 U.S. 547, 553, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967); *Aldabe v. Aldabe*, 616 F.2d 1089, 1091 (9th Cir. 1980).

Our jurisprudence has long recognized that "a general principle of the highest importance to the proper administration of justice [is] that a judicial officer [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 13 Wall. (80 U.S.) 335, 347, 20 L.Ed. 646 (1872). *See Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978) (citing other checks on malicious actions by judges). Though judicial prerogative is broad, two rules circumscribe it. First, the immunity covers only those acts which are "judicial" in nature. *Stump v. Sparkman*, 435 U.S. 349, 360–64, 98 S.Ct. 1099, 1106–08, 55 L.Ed.2d 331 (1978). Second, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57, 98 S.Ct. at 1104–05. *See Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974).

■ The first requirement is concededly satisfied here, as Martin's action in convicting O'Neil of contempt and sentencing her on that charge amounted to a judicial act. *Compare Gregory v. Thompson, supra*, at 63 (no immunity for assaulting litigant). As to the second requirement, however, the court below found that Martin acted in the clear absence of all jurisdiction. We disagree and hold that Martin acted merely in excess of jurisdiction.

The distinction between the two types of deficiencies in jurisdiction is expressed by *Sparkman* as follows:

[I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

435 U.S. at 357 n.7, 98 S.Ct. at 1105 n.7, *quoting Bradley v. Fisher, supra*. Martin's action in convicting O'Neil of contempt, an offense within his court's jurisdiction, although without the requisite papers to confer jurisdiction over this particular commission of the offense, is more analogous to a criminal court convicting for a nonexistent offense than to a probate court hearing a criminal case. It is the sort of "grave procedural error" that does not pierce the cloak of immunity. *See Sparkman, supra*, at 359, 98 S.Ct. at 1106.

Other circuits have found immunity in parallel contexts. *See Williams v. Sepe*, 487 F.2d 913, 913 (5th Cir. 1973) (per curiam) (". . . Judge Sepe failed to comply with the procedure for prosecuting an indirect contempt."); *Robinson v. McCorkle*, 462 F.2d 111 (3d Cir.), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972). In *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972), the judge was immunized although he may "have violated state and/or federal procedural requirements regarding contempt citations." *Sparkman, supra*, 435 U.S. at 361, 98 S.Ct. at 1107. Martin must be accorded similar protection.

In our most recent pronouncement on judicial immunity, we remarked: "[W]hen a judge . . . acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction, judicial immunity is lost." *Rankin v. Howard*, 633 F.2d 844, 849 (9th Cir. 1980). Clearly valid Oregon statutes and case law expressly require a charging affidavit before jurisdiction is conferred over indirect contempt charges. *See State ex rel. Oregon State Bar v. Lenske, supra*. Martin acted without such an affidavit. But *Rankin* does not thereby deprive him of judicial immunity.

The language quoted from *Rankin* addresses the situation in which a court violates a rule of law expressly depriving it of jurisdiction. The instant case involves a court which does not comply with all the requirements of a statute conferring jurisdiction.[4] In the first case the court usurps

---

4. *Sparkman, supra*, seems to draw the same distinction. In the course of holding immune an Indiana judge who ordered an unconsented sterilization, it implied that had an Indiana statute or case prohibited the trial court from considering a sterilization petition, immunity would have been denied. 435 U.S. at 358, 98 S.Ct. at 1105.

authority, while in the latter it discharges, albeit imperfectly, the purpose for which it is constituted.

The distinction between these two situations arises from a consideration of the basis underlying judicial immunity—"principled and fearless decision-making." *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). Such fearless decision-making is fostered by granting judges immunity when they rule on matters belonging to categories within their court's jurisdiction, even when they fail to comport with procedural niceties necessary to give the court power over the particular matter. On the other hand, immunizing judges from liability when they rule on matters belonging to categories which the law has expressly placed beyond their purview can lead only to unprincipled decisions. Martin's actions are of the former variety; accordingly, they fall within the realm judicial immunity protects.

■ Intent, it should be noted, plays no role in the foregoing analysis. Evil intent is not a sufficient element for piercing judicial immunity: "[a] judge will not be deprived of immunity because the action he took ... was done maliciously ...." *Stump v. Sparkman, supra,* 435 U.S. at 356, 98 S.Ct. at 1104. Further, neither is state-of-mind a necessary element. The *Sparkman* footnote quoted above states that a probate judge who tries a criminal case will not be immune from liability for his action. 435 U.S. at 357 n.7, 98 S.Ct. at 1105 n.7. That language is in no way contingent upon the probate judge's absence of good faith, nor does any reason appear in the opinion for interpolating such a requirement.[5]

A consideration in opposition to the requirement of evil state-of-mind emerges from the policy behind judicial immunity. The rule serves to protect judges not only against monetary damages, but further from vexatious litigation, which can be equally chilling of judicial independence regardless of its outcome. Thus, judicial immunity, when properly applied, releases the judge from any exposure at the summary judgment stage, rather than forcing him to endure an entire trial. That purpose would be undermined if a judge could be hauled into court by a litigant's mere allegation that the judge acted with evil intent. Because intent is a notoriously difficult issue, often requiring sensitive findings of fact, a trial would frequently, if not always, be required before the judge could be released from jeopardy for his actions. Judicial immunity must offer judges broader protection.

### III

■ Under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, "the [trial] court, in its discretion, may allow the prevailing party [in a civil rights suit] a reasonable attorney's fee as part of the costs." This court will not disturb an award of attorney's fees under the Act unless the district court abused its discretion. *See Gluck v. American Protection Industries, Inc.,* 619 F.2d 30, 32 (9th Cir. 1980). An abuse of discretion occurs unless the court considers twelve specified guidelines in setting the amount of the award. *Fountila v. Carter,* 571 F.2d 487, 496 (9th Cir. 1978); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69–70 (9th Cir. 1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).[6]

5. A judge's assertion that he acted in good faith can operate on two levels. We hold that it does not enter into whether a judge is *immunized* from liability. We express no view as to what role a judge's good faith *defense* can play in a § 1983 action, once the judge's immunity is pierced. *See Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967) (allowing police officers to assert good faith as defense in § 1983 action); *Gilker v. Baker,* 576 F.2d 245, 247 (9th Cir. 1978); *Handverger v. Harvill,* 479 F.2d 513, 516 (9th Cir.), *cert. denied,* 414 U.S. 1072, 94 S.Ct. 586, 38 L.Ed.2d 478 (1973) (same applied to university officials).

6. The twelve guidelines are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship

**371**

Although the attorney's fee award in this case ($700 against Coleman and $5,700 against Martin) does bear a relationship to the amount and apportionment of the damages ($633.70 against Coleman and $4,500 against Martin), this is only one of the twelve guidelines the trial court should have considered. *Id.* It is unclear from the record whether the trial court considered the other eleven. Because meaningful review of the attorney's fee award is accordingly impossible, we remand for findings of fact and conclusions of law. *See Fountila v. Carter, supra,* 571 F.2d at 496–97; *Kerr v. Screen Extras Guild, Inc., supra,* 526 F.2d at 69–70.

The judgment against Martin is REVERSED. The award of attorney's fees against Coleman is REVERSED AND REMANDED.

KENNEDY, Circuit Judge, concurring:

I think it necessary to observe that, while our decision in *Rankin v. Howard,* 633 F.2d 844 (9th Cir. 1980), was correct, nevertheless some of the court's language in that case might be used to define judicial immunity too narrowly. As we recognize in the case before us, the *Rankin* court stated that "when a judge ... acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction, judicial immunity is lost." *Id.* at 849. It is somewhat hard to imagine a statute which "expressly deprives," or "expressly forecloses" jurisdiction, but the ambiguity of the formulation is such that in some future case it might be argued that a judicial act, mistakenly taken, was violative of the standard. This is especially likely when the presence of immunity turns on the altogether too nice distinction between acting in the face of statute or case law expressly depriving the judge of jurisdiction (characterized here as a usurpation of authority), and acting in the face of statute or case law expressly requir-

with the client, and (12) awards in similar cases.
*Fountila v. Carter, supra,* 571 F.2d at 496, *citing Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974).

ing and conditioned on a jurisdictional prerequisite that is absent (said to be an imperfect discharge of authority.) Assuming these are categories capable of practical application, I should think judicial immunity might attach in either type of case, at least absent intentional or reckless disregard of the limits on judicial authority. With these comments, I concur in the opinion of the court.