Argued and submitted April 1, affirmed November 20, 1985

JACKSON, fna Washington,
*Appellant,*

*v.*

MULTNOMAH COUNTY,
*Respondent.*

(A8206-03767; CA A31524)

709 P2d 1153

Richard D. Senders, Portland, argued the cause and filed the brief for appellant.

Jane Ellen Stonecipher, Assistant County Counsel, Portland, argued the cause for respondent. With her on the brief was John B. Leahy, County Counsel for Multnomah County, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiff appeals an order of the circuit court, on its own motion, which set aside plaintiff's judgment for damages and ordered a new trial. ORS 19.010(2)(d); ORCP 64G. Plaintiff brought this action under the Oregon Torts Claims Act, ORS 30.260, *et seq* alleging that defendant's negligence caused her arrest. We affirm.

On June 4, 1981, a woman sold stolen property to an undercover police agent. The suspect was not arrested at that time, but police videotaped the sale. They identified the suspect, who used the name Beverly, as a prostitute who had in the past used the name "Jacqueline Washington." That was also plaintiff's name.

The deputy district attorney presented the case to the grand jury. It returned an indictment, and the deputy district attorney obtained a warrant, in the name of "Jane Doe, also known as Beverly, possibly known as Jacqueline Washington." Defendant's data entry clerk, however, entered the warrant into the regional Justice Automated Warrant System computer in the name of "Jacqueline Washington."

On February 7, 1982, a Milwaukie police officer stopped plaintiff for failing to dim her headlights to oncoming traffic. The officer ran a regional computer check. It revealed the outstanding warrant in plaintiff's name, and the police officer arrested her. Plaintiff was handcuffed, searched, separated from her baby, who was a passenger in her car, and incarcerated for the night in jail. Subsequently, plaintiff viewed the videotape of the sale and identified the suspect as Beverly Ball, a person whom she had known for a short time in 1980.

Defendant's answer in this action alleged that it is

"immune from liability for having relied, in good faith, on a facially valid warrant prepared by the District Attorney which indicated, on its face, that plaintiff was the person for whom the Circuit Court of the State of Oregon for Multnomah County had issued the warrant."

On the day of trial, over plaintiff's objection, the court allowed defendant to file an amended answer which alleged:

"Defendant Multnomah County is immune from liability

for having relied, in good faith, on a facially valid warrant which had plaintiff's name, date of birth and address on it as identifiers for the suspect, and which specified no other name or description by which the person for arrest could be identified. If the warrant's description was not sufficient under law and plaintiff was not the person whose arrest the warrant commanded, this was not due to any fault of defendant, but is instead due to the fault of officials who are immune, and hence defendant is immune for its good faith reliance on the warrant."

At trial, plaintiff argued that both the deputy district attorney and the data entry clerk were negligent.[1] The court instructed the jury that it could find the county negligent if either the deputy district attorney or the data entry clerk was negligent.[2] The court refused defendant's request to instruct the jury that the county was immune for acts of the deputy district attorney that were within the scope of his employment. The jury returned a verdict for plaintiff for $27,500.

The court denied defendant's motion for judgment

---

[1] In closing argument plaintiff argued as follows:

"The case is transmitted to Alan Spinrad and it is here—is the first place you have got to look critically at whether or not the County used reasonable care because Alan Spinrad is an employee of the County, a Deputy District Attorney. * * *. What comes to Alan Spinrad is a police report, a CRISS report for a Jacqueline Washington, a photograph and a case envelope. Here is the first act of carelessness. The case envelope says—gives a date of birth of 3/5/63 for the suspect and, on the photograph information, described that suspect. Mr. Spinrad prepares the warrant. He chooses to disregard the information and simply take information off of a CRISS report even though there is nothing in the police report to indicate that the suspect is, in fact, this lady mentioned on the CRISS report. * * *

" * * * And that is what we are claiming here, that the system, through acts of carelessness, beginning with Alan Spinrad and ending with the computer operator, was careless.

"* * * * *

"Alan Spinrad testified that he thought that the warrant is either going to go to the police involved in the sting operation for service or go into the computer as Jane Doe, also known as 'Beverly,' possibly known as Jacqueline Washington. That is the only way it made sense. He didn't follow up, and that's another act of carelessness by Mr. Spinrad. He should have followed up. That's the way the warrant should have been served, and he should have followed up to make sure it was done that way."

[2] The judge instructed the jury:

"The County can act and only act through its officers, agents and employees. In this case, if any officer, agent or employee of the County was negligent in the respects claimed, such negligence is to be treated as the act of the County."

notwithstanding the verdict but set aside the judgment and ordered a new trial on its own motion. ORCP 64G. It stated that preparation of a warrant to be signed by a judge is part of a "quasi-judicial process" and

> "I therefore hold that the district attorney and his deputies are immune from civil liability for preparing and causing a warrant of arrest to issue. Because the deputy district attorney is immune, the County cannot be held civilly liable for the action of a deputy district attorney any more than the State of Oregon could be held liable for the action of a judge.
>
> "Defendant in this case has moved for judgment notwithstanding the verdict under Rule 63, but not in the alternative for a new trial under Rule 64, and defendant's time to so move has expired. Defendant's motion is denied. Because I am satisfied that I was in error in permitting the jury to consider negligence on the part of the deputy district attorney as negligence on the part of the defendant, I am on my own motion under Rule 64G setting aside the verdict and ordering a new trial."

■ Plaintiff first asserts that the court erred in allowing defendant to file an amended answer on the day of trial. A party may amend a pleading with leave of the court, which is to be "freely given when justice requires," ORCP 23A, and the court's decision will be reversed only for abuse of discretion. Here the amendment was not completely outside the scope of the issues framed in the original pleadings, and plaintiff has not demonstrated that she was prejudiced by the amendment. We hold that the court did not abuse its discretion.

■■ Plaintiff's second assignment is that the court erred "in ruling that the deputy district attorney was immune from liability and in granting a new trial." A new trial can only be ordered if prejudicial error was committed. *Beglau v. Albertus,* 272 Or 170, 180, 536 P2d 1251 (1975). The court believed that it committed prejudicial error in failing to instruct the jury that the deputy district attorney was immune.[3]

■■ The Oregon Tort Claims Act provides the exclusive basis for a tort action against a public body. ORS 30.300. Subject to specified limitations, "every public body is liable for

---

[3] Because the court granted the new trial on its own motion, we need not decide whether the error was properly preserved. *Young v. Crown Zellerbach,* 244 Or 251, 257, 417 P2d 394 (1966).

its torts and those of its officers, employes and agents acting within the scope of their employment or duties." ORS 30.265(1).[4] ORS 30.265(2) limits the scope of liability:

"Every public body is immune from liability for any claim for injury to or death of any person or injury to property resulting from an act or omission of an officer, employe or agent of a public body when such officer, employe or agent is immune from liability."

Defendant, therefore, is immune from liability for conduct of the deputy district attorney for which he is immune.[5]

At common law, public officers were immune from liability for "discretionary" acts performed within the scope of their employment. The court has stated:

"Discretion, as this court has noted in other contexts, involves 'room for policy judgment,' *Smith v. Cooper,* 256 Or 485, 502, 475 P2d 78, 45 ALR3d 857 (1970), quoting *Dalehite v. United States,* 346 US 15, 36 (1953), or the responsibility for deciding 'the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued,' *Antin v. Union High School Dist. No. 2,* 130 Or 461, 469, 280 P 664 (1929). * * *. In other words, insofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has 'discretion' to the extent that he has been delegated responsibility for the latter kind of value judgment.

"* * * In *Watts v. Gerking,* 111 Or 641, 222 P 318, rev'd on rehearing, 228 P 135 (1924), a divided court accorded immunity from an action for malicious prosecution to a district attorney. * * *. Although policy discretion is more likely to be found at or near the level of political responsibility, it is not simply a matter of the defendant's office but of the scope and nature of the choices delegated to him." *McBride v. Magnuson,* 282 Or 433, 437, 438, 578 P2d 1259 (1978).

The duties of a deputy district attorney include the prosecution of criminal conduct. ORS 8.665, 8.670, 8.780. In

---

[4] Apart from the issue of immunity, defendant does not dispute that it is responsible for the acts of the deputy district attorney. *But see* ORS 8.610, *et seq.*

[5] Because we find that defendant was immune under ORS 30.265(2), we need not consider any other basis of immunity.

deciding "when, how, and against whom to proceed" he exercises the sort of discretion for which he is immune at common law. *Watts v. Gerking et al,* 111 Or 641, 657, 222 P 318, 228 P 135 (1924). Under ORS 30.265(2), defendant is immune from liability for similar acts.

■    When he prepared and obtained the warrant, the deputy district attorney performed at least some acts that were within the realm of his prosecutorial discretion. For example, his choice to include the name Jacqueline Washington as a possible alias, made on the basis of the information available to him at the time, was such an act. Because, under the court's instruction, the jury might have returned its verdict for plaintiff based on conduct of the deputy district attorney for which defendant is immune under ORS 30.265(2), the court did not err when it granted defendant a new trial.

Affirmed.