Argued and submitted April 12, reassigned May 7, 1990, the decision of the Court of Appeals and the judgment of the circuit court reversed and case remanded to circuit court for further proceedings January 17, 1991

Jennifer FAY
and Ginevra Fay-Babb,
by Robert Babb, her Guardian Ad Litem,
*Petitioners on Review,*

*v.*

CITY OF PORTLAND,
and Anthony Lee Hough,
*Defendants (below),*

*and*

COUNTY OF MULTNOMAH,
*Respondent on Review.*

(TC A8711-06906; CA A50271; SC S36751)

804 P2d 1155

Cynthia Cumfer, Portland, argued the cause and filed the petition for petitioner on review.

J. Michael Doyle, Assistant County Counsel for Multnomah County, Portland, argued the cause for respondent on review. With him on the response to the petition was Laurence Kressell, County Counsel for Multnomah County, Portland.

Before Peterson, Chief Justice, and Carson, Jones,** Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

UNIS, J.

---

** Jones, J., resigned April 30, 1990.

## UNIS, J.

At issue in this case is whether plaintiffs' claims for personal injury against defendant Multnomah County (county) are barred by absolute judicial immunity. The trial court granted summary judgment for the county[1] on plaintiffs' first and third claims for relief and directed entry of a judgment pursuant to ORCP 67 B.[2] The Court of Appeals determined that the county was immune from liability and affirmed the judgment of the trial court. *Fay v. City of Portland,* 99 Or App 396, 782 P2d 182 (1989). We hold that plaintiffs' claims are not barred by absolute judicial immunity and, therefore, reverse.

We review the record in the light most favorable to the party opposing the motion for summary judgment, in this case plaintiffs. *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978). Plaintiffs Ginevra Fay-Babb and her mother, Jennifer Fay, were assaulted by defendant Hough six days after Hough had been released from the psychiatric unit of the Multnomah County Detention Center (MCDC). At the time of Hough's release, the county was under a federal court order to limit population at MCDC to relieve jail overcrowding. The court order provided for a release-matrix system that ranked each prisoner's order of release according to the severity of the crime with which the prisoner was charged. The court order also allowed the sheriff to alter the order of release based upon other specified criteria, such as the inmate's propensity for violence, the history of arrest or convictions, and his institutional classification at MCDC (*i.e.,* the inmate's custody status). The federal court

---

[1] Plaintiffs took a default judgment against defendant Hough. The City of Portland was voluntarily dismissed as a party.

[2] ORCP 67 B provides:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

order required court approval before the criteria could be amended.

At the time of the assault, a special order complying with the court order and promulgated by the Multnomah County sheriff was in effect. The sheriff's special order required corrections officials at MCDC to score each inmate based upon the inmate's highest ranking charge, any companion charges, any holding charge modifiers,[3] the inmate's custody status, the inmate's behavior and criminal history. Those inmates with the lowest release-matrix scores were to be released before prisoners with higher scores.

Defendant Hough was given a release-matrix score of 50. That score, however, did not reflect Hough's institutional classification, *i.e.,* that he was being housed in the psychiatric unit. Under the sheriff's special order, Hough's custodial status in that unit should have added another 20 points to his score. Additionally, Hough was released before at least six other inmates were released who had release-matrix scores of less than 50. Had the criteria set forth in the court order, as implemented by the sheriff's special order, been followed, Hough would not have been released.

The trial court granted summary judgment in favor of the county, ruling that the county was absolutely immune from plaintiffs' claims. The Court of Appeals, in an *in banc* decision, affirmed. *Fay v. City of Portland, supra.* A majority of that court held:

> "Calculation of Hough's matrix score and authorization of his release were parts of the performance of a judicial function, because only judges are authorized to make release decisions and because the employes who actually released him were acting under the authority of the federal matrix release order. * * * In performing a judicial function, just as in performing any function, the actor can make a mistake or can be simply, simple-mindedly or even stupidly wrong. The function is still judicial."

99 Or App at 399. Having determined that the county's actions in releasing Hough were judicial in nature, the Court

---

[3] Holding charge modifiers refer to "[t]he number of FTA [failure to appear] warrant charges and the number of Revoke Recog[nizance] warrant charges."

of Appeals concluded that the county was entitled to immunity.

Plaintiffs' complaint alleges that the county was negligent "in releasing Defendant Hough in that Defendant Multnomah County failed to correctly apply the rules and procedures of its release-matrix system." Specifically, plaintiffs allege that the county was negligent in two respects: first, because it failed to add points to Hough's release-matrix score for being housed in the psychiatric unit and, second, because it did not release inmates with scores lower than Hough's score before it released Hough.

Plaintiffs assert that the county cannot claim absolute immunity against these allegations because its decision to release Hough violated the court order and thereby exceeded the judicial authority given to it by the federal court to release prisoners.

Defendant county responds that it is entitled to absolute immunity from liability arising from the selection of inmates for release. The county argues that immunity is available to "public officials associated with judicial process" who "perform judicial functions." The county asserts that its corrections officials were performing a judicial function when they decided to release Hough and thus it is protected from liability "regardless of whether there [was] a mistake in the execution of the judge's order or the rules and procedures of the corrections division."

This court last discussed judicial immunity[4] in *Praggastis v. Clackamas County,* 305 Or 419, 752 P2d 302 (1988). Praggastis sued Clackamas County, claiming damages for the failure of a court clerk to docket a decree of dissolution as a judgment. The clerk did not docket the decree as a judgment

---

[4] Immunity for performing acts associated with the judicial process extended to public officers other than judges is often referred to as quasi-judicial immunity. As we stated in *Praggastis v. Clackamas County,* 305 Or 419, 427, 752 P2d 302 (1988), the distinction between the immunity that protects a judge and the immunity that protects a public officer for performing a judicial function "is a distinction of name and not a distinction of immunity." We, therefore, choose not to employ the term "quasi-judicial" immunity in the present case.

In *Praggastis,* this court "indicated that the common-law immunity for judicial * * * acts is part of those immunities preserved for discretionary acts under the OTCA, ORS 30.265(3)." *Id.*

because she had been instructed by the presiding judge to docket only documents which specifically contained language identifying the document as a judgment, and the decree did not qualify as such. We concluded that the clerk's actions were protected from liability by absolute judicial immunity. That decision was based on our determination that the presiding judge's decision as to what constituted a docketable judgment, even though wrong, was cloaked with immunity. The court held that in adhering to the court's directive not to docket certain documents, the clerk also was entitled to immunity.

The Court of Appeals and the county oversimplify this court's holding in *Praggastis* when they assert that whether absolute judicial immunity is recognized depends on the nature of the function being performed. Although there is language in *Praggastis* to that effect, its actual holding is that a court clerk who follows the direction of the court in carrying out an authorized judicial function will be immune from liability. *Id.* at 428-29, 432.[5] *Compare Charco, Inc. v. Cohn,* 242 Or 566, 411 P2d 264 (1966) (party injured by the negligence of a county clerk in failing timely to file an order was entitled to recover against the clerk).

For a public official or employee to have absolute immunity for acts performed under a court order or directive, two criteria must be established. First, the court order or directive must be a permissible exercise of judicial authority.[6] Second, the acts must comply with the court order or directive. If the only source of absolute judicial immunity is the court's directions, and these directions do not authorize the

---

[5] *Praggastis* is consistent with other jurisdictions' rulings that public officials assigned to carry out judges' orders are shielded from liability in the performance of their duties. *See, e.g., Valdez v. City and County of Denver,* 878 F2d 1285, 1287-88 (10th Cir 1989) (listing federal cases providing immunity to court officers acting pursuant to court orders). The rationale normally given for such a rule is the public's interest in requiring strict adherence to judicial decrees. *See id.* at 1289 ("[public] [o]fficials such as the defendants must not be required to act as pseudo-appellate courts scrutinizing the orders of judges").

[6] Although a public official or employee will not be entitled to absolute immunity from liability for the consequences of an impermissible exercise of judicial authority, this opinion does not address whether or in what circumstances a claim of *qualified* immunity may be established. The only immunity in dispute in the present case at this time is absolute judicial immunity. No claim of qualified immunity has been raised or argued by the parties.

public official's or employee's conduct, then the official or employee is not protected from liability by absolute judicial immunity.[7]

■    There is no contention that the federal court order constitutes an impermissible exercise of judicial authority. We must, therefore, consider whether the acts of the county corrections officials comply with that court order. We hold that the corrections officials exceeded the authority granted to them by the court order in two respects. First, in choosing to release Hough before inmates with lower matrix scores, corrections officials directly disregarded the court's directive to release those inmates with the lowest matrix scores before releasing prisoners with higher scores. Second, in disregarding Hough's institutional classification at MCDC, corrections officials failed to add points to Hough's release-matrix score on the basis of his being housed in the psychiatric unit. The court order gave discretion to the sheriff to consider the inmate's institutional classification when computing an inmate's release-matrix score. The sheriff exercised that discretion and, as previously stated, directed corrections officials, through a special order, to determine each inmate's release-matrix score based in part on the inmate's housing status. The corrections officials had no authority to disregard the inmate's institutional classification. The county's corrections officials, therefore, were not authorized by the court order to release Hough without using the criteria approved by the federal court. The county's claim for absolute judicial immunity from liability must, therefore, fail.

We conclude that it was not proper for the trial court to grant summary judgment based on absolute judicial immunity. The decision of the Court of Appeals and the judgment of the circuit court are reversed, and the case is remanded to the circuit court for further proceedings.

---

[7] As the Court of Appeals' dissent in this case noted, *Fay v. City of Portland,* 99 Or App 396, 400 n 1, 782 P2d 182 (1989), other jurisdictions have declined to extend judicial immunity to public officials who acted beyond the authority granted to them by court orders or statutes. Examples are *McCray v. State of Maryland,* 456 F2d 1 (4th Cir 1972); *Dalton v. Hysell,* 56 Ohio App 2d 109, 381 NE2d 955 (1978); *U.S. Gov. ex rel Houck v. Folding Carton Admin. Committee,* 121 FRD 69 (N D Ill 1988).

**PETERSON, C. J.,** specially concurring.

This is a negligence action for damages allegedly sustained by the plaintiffs following the release of a prisoner named Hough from the Multnomah County Detention Center. The case comes to us on summary judgment. From the materials in the trial court record, one can infer that the corrections officers intentionally disregarded the injunction of a federal judge in making a release decision. On the other hand, it may be inferred that the corrections officers made a mistake, either as to the matrix scores of the prisoners, or in tabulating the matrix numbers. The case turns on whether a form of absolute judicial immunity extends to the corrections officers and their employer, Multnomah County.

The general rule is that a judge acting in his or her judicial capacity is entitled to absolute immunity from damage claims. *Praggastis v. Clackamas County,* 305 Or 419, 426, 752 P2d 302 (1988); *McCray v. State of Maryland,* 456 F2d 1, 3 (4th Cir 1972). Absolute judicial immunity protects judges against all damage claims, including claims of malice or corruption. *Pierson v. Ray,* 386 US 547, 554-55, 87 S Ct 1213, 18 L Ed 2d 288 (1967), *over'd on other grounds* by *Harlow v. Fitzgerald,* 457 US 800, 396 S Ct 2727, 73 L Ed 2d 396 (1982); *McCray v. State of Maryland, supra,* 456 F2d at 3.

The reason for the rule of absolute immunity was stated in *Praggastis v. Clackamas County, supra.*

"This court recognized the existence and the limitations on the doctrine of judicial immunity in *Shaw v. Moon,* 117 Or 558, 245 P 318 (1926). The common law recognized that there is a public good to be gained from the principled and fearless decision-making of judicial officers freed from concern over suits by disappointed litigants. To gain this good, it is necessary to cloak judicial officers with immunity from civil liability for their acts, so long as these acts are within the jurisdiction of the officer." 305 Or at 426.

*Praggastis* also states a corollary rule that may apply in this case under which other persons performing acts "associated with the judicial process" are entitled to immunity protection.

> "Immunity for judicial acts extends not merely to judges. Other officials who are performing acts associated with the judicial process may be protected as well. *Watts v. Gerking*, 111 Or 641, 222 P 318, 228 P 135 (1924). This court has indicated that the common-law immunity for judicial and quasi-judicial acts is part of those immunities preserved for discretionary acts under [the Oregon Tort Claims Act], ORS 30.265(3).

> "Judicial immunity depends on the performance of a judicial function. When such judicial functions are performed by a public officer other than a judge, the immunity is often referred to as quasi-judicial immunity, but this is a distinction of name and not a distinction of immunity. *Watts v. Gerking, supra; see also Imbler v. Pachtman*, 424 US 409, 423, 96 S Ct 984, 47 L Ed 2d 128 (1976). Judicial immunity is granted or withheld on the basis of the nature of the function being performed, and not on the basis of the office. *Shaw v. Moon, supra; see also Forrester v. White*, 484 US [219, 227], 108 S Ct 538, 98 L Ed 2d 555 [(1988)]." 305 Or at 426-27 (footnote omitted).

A case cited in the majority opinion, *Valdez v. City and County of Denver*, 878 F2d 1285 (10th Cir 1989), states the same proposition. It cites and discusses cases involving the execution of judicial decrees by non-judges and states that such acts are such an "integral part of the judicial process" that officers executing court orders are shielded by absolute immunity. *Id.* at 1287-88.

In Oregon, prisoner release decisions are judicial decisions. The authority to release defendants resides in the court. ORS 135.245(2). The sheriff of a county possesses no independent authority to make release decisions. ORS 135.215 provides:

> "The commitment [of the defendant] shall be directed to the sheriff of the county in which the [committing] magistrate is sitting. Such sheriff shall receive and detain the defendant, *as thereby commanded,* in a jail located in the county of the sheriff or, if there is no sufficient jail in the county, by such means as may be necessary and proper therefor or by confining the defendant in the jail of an adjoining county within or without the state." (Emphasis added.)

In many Oregon counties, because of jail overcrowding, the courts have delegated this function to others (*see,* for example, ORS 135.235(3)(b)), under guidelines similar to those contained in the decree involved in this case.

The case at hand is unusual in the sense that the corrections officers were acting pursuant to an order of the federal judge, rather than pursuant to an order of an Oregon circuit or district judge. Even so, I view this case as the functional equivalent of one in which a local presiding judge has issued an order containing policies for release, and the person charged with making the release decisions is acting pursuant to that order.

That brings me to my concern with the majority opinion. As stated earlier, more than one inference can be drawn from the evidence in the record. Some evidence suggests intentional disregard of the federal court decree. Other evidence suggests nothing more than mere negligence on the part of the releasing officer, either in tabulating the matrix score or in determining the matrix scores of the other incarcerated persons.

I concur that this case must go back to the trial court because no immunity would exist for intentional disregard of the federal court decree. But I write separately to express my disagreement with statements made in the next to the last paragraph of the majority opinion, 311 Or at 74, that the county corrections officials would lose their immunity if they acted other than in strict accordance with the authority granted them by the court order. The majority opinion states that the defendant would lose absolute judicial immunity for any departure from the federal court order.

Judges are entitled to absolute immunity for all acts performed in a judicial capacity, even malicious or corrupt acts. Absolute judicial immunity certainly would extend to the negligent acts of judges in either tabulating a matrix score or in determining the matrix score of other incarcerated persons.

If a judge has delegated the responsibility for tabulating the matrix score of a particular prisoner or determining the matrix score of other incarcerated persons, and if the person to whom that responsibility is delegated erroneously

tabulates the matrix, or erroneously determines the matrix score of other incarcerated persons, that person should have the same absolute immunity as the judge would have, if he or she had made the error. The *Praggastis* opinion touches upon this.

> "Clerks may derive an immunity from their performance of actions at the direction of the court. For this immunity to exist, the clerk must be acting at the direction of the court in carrying out an authorized judicial function. That the actions in question are 'ministerial' in nature, or are performed at the direction of a statute, does not exclude the possibility of immunity. A clerk 'may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge.' *Waits v. McGowan*, 516 F2d 203, 206 (3d Cir 1975)." 305 Or at 428-29.

In its opinion, the Court of Appeals stated:

> "Calculation of Hough's matrix score and authorization of his release were parts of the performance of a judicial function, because only judges are authorized to make release decisions and because the employes who actually released him were acting under the authority of the federal matrix release order. Their only authority was derived from the federal court and the federal judge. In applying the matrix, they were carrying out a judicial order and were thereby performing a judicial function. If they were not carrying out a judicial function, they were not carrying out any lawful function at all in the particular circumstances. In performing a judicial function, just as in performing any function, the actor can make a mistake or can be simply, simple-mindedly or even stupidly wrong. The function is still judicial." *Fay v. City of Portland*, 99 Or App 396, 399, 782 P2d 182 (1989) (footnote omitted).

I maintain that corrections officers who have been delegated to do the work that judges do — making release decisions — would be entitled to the same immunity as a

judge, absent an intentional departure from the judge's instruction.[1]

---

[1] Only the question of absolute immunity is before us in this case. We do not address or decide any qualified immunity issue. The plaintiffs will have to prove all the elements of the tort alleged before they can recover.

Due to day-to-day changes in a jail population, the collective and individual dangerousness of the jail population varies from day to day. On a given day, it may be appropriate to release a prisoner with a dangerousness matrix of, say, 45. The following day, the release officer might negligently release a prisoner with a lower dangerousness matrix score of, say, 42.

Release officers and others charged with making release decisions necessarily must release persons whose freedom from confinement poses some risk of harm to the public. Normally, there is no liability if a third person is injured by a criminal defendant on bail, on parole, on probation or on recognizance. The releasor is not and should not become an insurer.

In this case we are not called upon to define the boundaries of qualified immunity, or the duty of care. The Arizona Supreme Court, in a case involving the Arizona Parole Board, adopted this rule:

"We believe that a limited immunity for members of the Board of Pardons and Paroles with liability only for the grossly negligent or reckless release of a highly dangerous prisoner strikes the proper balance between the competing interests." *Grimm v. Arizona Bd. of Pardons & Paroles*, 115 Az 260, 564 P2d 1227, 1234-35 (1977).