Argued and submitted February 25, affirmed September 22, 1999

Charles HEUSEL,
*Appellant,*

*v.*

MULTNOMAH COUNTY
DISTRICT ATTORNEY'S OFFICE,
*Respondent.*

(9703-01834; CA A101622)

989 P2d 465

Carson D. Bowler argued the cause for appellant. With him on the brief was Schwabe, Williamson & Wyatt, P.C.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Armstrong, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff appeals, assigning error to the trial court's allowance of a directed verdict against his claims for false imprisonment and negligence. The court concluded that defendant Multnomah County District Attorney's office was absolutely immune from those claims. We affirm.

The material facts, as set out in the parties' stipulated facts and associated exhibits, are straightforward. In December 1993, plaintiff's former girlfriend, Bernardi, obtained a Family Abuse Prevention Act (FAPA) restraining order against defendant. ORS 107.700 *et seq.* On February 1, 1994, the circuit court, upon Bernardi's application, modified and continued the restraining order. ORS 107.725. Under ORS 107.718(1), a FAPA restraining order remains in effect for one year or until the order is withdrawn, amended, or superseded by the court, whichever occurs first. *See also* ORS 107.720(2)(a). The circuit court took no subsequent action with respect to the February 1, 1994, order.

On February 3, 1995, following a court hearing in which plaintiff was convicted of having violated the FAPA order in September 1994, plaintiff contacted Bernardi. Bernardi called the police, and the police report recites that Bernardi told the investigating officer that "she had just reconfirmed her restraining order." In fact, the restraining order had not been renewed. Bernardi subsequently signed a sworn statement averring that plaintiff had violated the restraining order on February 3, 1995.

On April 3, 1995, Wong, a certified law student acting as a deputy district attorney, applied for an arrest warrant, ORS 33.065(2)(b), and, in doing so, filed an "Affidavit in Support of Arrest Warrant" averring the truth of the recitations in Bernardi's complaint and of the information in the investigating officer's report. The circuit court issued the arrest warrant and, in May 1995, plaintiff, after being arrested in Washington State, was arraigned in Multnomah County on the charge of violating the restraining order. In June 1995, that charge was dismissed on the state's own motion because the restraining order had not, in fact, been in effect at the time of the February 3, 1995, contact.

In March 1997, plaintiff brought this action against the Multnomah County District Attorney's office alleging claims of negligence and false imprisonment. The thrust of those claims was that the District Attorney's office, and Wong in particular, had been negligent in failing to ascertain whether the FAPA order was still in effect on February 3, 1995, before initiating the prosecution (or, conversely, in initiating a prosecution based on an expired retraining order) and that the District Attorney's office had not adequately supervised Wong. Defendant answered, raising, *inter alia*, affirmative defenses of "absolute quasi-judicial immunity," discretionary function immunity pursuant to ORS 30.265(2),[1] and discretionary function immunity pursuant to ORS 30.265(3)(e).[2]

The case was tried to a jury, but, on the second day of trial, the parties stipulated to the material facts. Thereafter, the court allowed defendant's motion for a directed verdict on the grounds of immunity and entered its judgment:

> "If the jury were to render a verdict, based on Stipulated Facts and Exhibits, it would be for plaintiff in the amount of $7,500, but based on the written materials and arguments of the parties, the court grants directed verdict for the defendant on the grounds of immunity."

On appeal, the sole issue is whether defendant is immune from liability. Even more particularly, as framed by

---

[1] ORS 30.265(2) provides:

"Every public body is immune from liability for any claim for injury to or death of any person or injury to property resulting from an act or omission of an officer, employee or agent of a public body when such officer, employee or agent is immune from liability."

[2] ORS 30.265(3)(c) provides:

"Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

Judicial immunity is, for purposes of the Oregon Tort Claims Act, a species of discretionary function immunity. *See Praggastis v. Clackamas County*, 305 Or 419, 427, 752 P2d 302 (1988).

the parties, the question reduces to whether defendant is barred from asserting "quasi-judicial" immunity[3] because the court somehow lacked "jurisdiction" to issue the arrest warrant. *See Utley v. City of Independence*, 240 Or 384, 390, 402 P2d 91 (1965).[4] As amplified below, we conclude that plaintiff's "lack of jurisdiction" analysis is inapt and, consequently, we affirm.

██   In *Praggastis v. Clackamas County*, 305 Or 419, 752 P2d 302 (1988), the court explained the underpinnings of judicial immunity both at common law and as a species of "discretionary function" immunity under the Oregon Tort Claims Act:

> "The common law recognized that there is a public good to be gained from the principled and fearless decision-making of judicial officers freed from concerns over suits by disappointed litigants. To gain this good, it is necessary to cloak judicial officers with immunity from civil liability for their acts, so long as these acts are within the jurisdiction of the officer. * * *
>
> "Immunity for judicial acts extends not merely to judges. Other officials who are performing acts associated with the judicial process may be protected as well. This court has indicated that the common-law immunity for judicial and for quasi-judicial acts is part of those immunities preserved for discretionary acts under the OTCA, ORS 30.265(3).

---

[1] Although the parties employed the term "quasi-judicial" immunity, "[i]mmunity for performing acts associated with the judicial process extended to public officers other than judges" is, more properly, termed "judicial immunity." *Fay v. City of Portland*, 311 Or 68, 72 n 4, 804 P2d 1155 (1991); *Praggastis*, 305 Or at 427. Consequently, the balance of this opinion refers to "judicial immunity."

[1] Plaintiff does not contend that, even if Wong's general role with respect to initiating the prosecution and applying for the arrest warrant is absolutely immune under judicial immunity, his conduct in personally averring to the material facts is not. Thus, for purposes of this appeal, we need not and do not consider to what extent, if any, the application of judicial immunity might differ with respect to those functions. *See Kalina v. Fletcher*, 522 US 118, 118 S Ct 502, 139 L Ed 2d 471, 482 (1997) (although absolute judicial immunity applies to prosecutor's preparation and filing of charging information and motion for arrest warrant, prosecutor's personal attestation under penalty of perjury of the truth of facts set forth in "Certificate for Determination of Probable Cause" was not subject to judicial immunity because "[t]estifying about facts is the function of the witness, not of the lawyer.").

"Judicial immunity depends upon the performance of a judicial function. When such judicial functions are performed by a public officer other than a judge, the immunity is often referred to as quasi-judicial immunity, but this is a distinction of name and not a distinction of immunity. Judicial immunity is granted or withheld on the basis of the nature of the function being performed, and not on the basis of the office." 305 Or at 426-27 (footnote and citations omitted); *see also Fay v. City of Portland*, 311 Or 68, 72-73, 804 P2d 1155 (1991) (generally addressing attributes of judicial immunity).

Judicial immunity extends to prosecutors for acts performed in initiating prosecutions. Thus, a prosecutor is absolutely immune with respect to his or her decision as to "when, how, and against whom to proceed." *Watts v. Gerking et al*, 111 Or 641, 222 P 318, *rev'd on other grounds on reh'g* 111 Or 654, 657, 228 P 135 (1924); *see also Jackson v. Mult. Co.*, 76 Or App 540, 545-46, 709 P2d 1153 (1985). That principle was originally approved in *Watts*, where the plaintiff brought a malicious prosecution action, alleging that the prosecutor had caused him to be arrested under the Prohibition laws knowing that the plaintiff had not, in fact, violated the law. The Supreme Court initially held that in those circumstances—where the prosecutor "maliciously caus[ed] the arrest of [a] party for a pretended offense, which, at the time of the arrest, he knew had not been committed at all"—the prosecutor was not entitled to avail himself of judicial immunity. *Id.* at 652-53. On rehearing, however, the court reversed itself and concluded that prosecutors are absolutely immune from liability for malicious prosecution. In so holding, the court acknowledged the potential for abuse of prosecutorial power but concluded that the public interest in "fearless" criminal prosecutors was paramount. *Id.* at 668; *see also id.* at 671-72 (McBride, C. J., specially concurring) ("[P]ublic policy dictates rather that one citizen should suffer some financial loss than that the district attorneys of the state should be harassed by actions, to defend which might require a large portion of their time, to which the public has a right, and a large portion of the emolument prescribed by law as compensation for their services; and that it is better on the whole, that redress be afforded by prosecutions for misconduct in

office than that the results above indicated should be made possible.").

We and the Supreme Court have consistently reiterated that principle. *See McBride v. Magnuson*, 282 Or 433, 437, 578 P2d 1259 (1978) (citing *Watts* as illustrative of particular species of discretionary function immunity); *Rogers v. Hill*, 281 Or 491, 499 n 8, 576 P2d 328 (1978) (noting that public prosecutors enjoy "absolute privilege" with respect to initiation of criminal prosecutions); *Beason v. Harcleroad*, 105 Or App 376, 381, 384, 805 P2d 700 (1991) (affirming judgment on pleadings against malicious prosecution claim because "[p]rosecutors are immune from liability for civil damages on a malicious prosecution claim" under Oregon law but reversing judgment against claims based, *inter alia*, on prosecutors' issuance of press release because pleadings did not permit determination of whether, given content and timing of prosecutors' statements to media, those statements "ha[d] a sufficient relationship to afford a prosecutor a quasi-judicial immunity"); *Jackson*, 76 Or App at 545-46 (prosecutor was absolutely immune from liability for alleged negligence in identifying arrestee in preparing and obtaining arrest warrant).

Plaintiff contends, nevertheless, that defendant was not entitled to judicial immunity because, given the expiration of the FAPA order, there was a "clear absence of jurisdiction," *Utley*, 240 Or at 386, for the district attorney, or court, to act. *See also Praggastis*, 305 Or at 426 (judicial immunity applies "so long as [prosecutors'] acts are within the jurisdiction of the officer"). That argument misconstrues *Utley*'s jurisdictional principle.

In *Utley*, the defendant city recorder issued a warrant for the plaintiff's arrest without a sworn complaint having ever been filed. The plaintiff subsequently brought an action for false arrest, and the defendant asserted a defense of judicial immunity. The Supreme Court concluded that judicial immunity was inapposite because the filing of a complaint was a jurisdictional prerequisite to the issuance of the warrant:

"[W]hen a judicial officer issues a warrant without a sworn complaint having been made, there is no judicial business properly before him, and he acts as a private citizen. The unauthorized action is not, therefore, merely the erroneous exercise of colorable judicial power, but it is the usurpation of judicial power, and is not protected by immunity." *Utley*, 240 Or at 390.

In reaching that conclusion, the court relied on *Shaw v. Moon et al*, 117 Or 558, 245 P 318 (1926), where the Supreme Court concluded that a justice of the peace who issued a search warrant without the presentation of an affidavit was not entitled to judicial immunity:

"[I]t appears that [the justice of the peace] acted entirely without jurisdiction and for the wrongful and unlawful purpose of injuring plaintiff. It is not a case of an erroneous exercise of jurisdiction, but rather one wherein there is a total absence of jurisdiction. It must not be confused with cases involving search-warrants issued upon defective or insufficient affidavits, for in such proceedings the judge is exempt from liability even though he acted maliciously and without probable cause. There is a vast distinction between an erroneous exercise of authority and an usurpation of authority. It is not the policy of the law to subject courts of either limited or general jurisdiction to actions for damages, while acting within their jurisdiction, even though the judicial act be erroneous and not in good faith. In the instant case there was not even a colorable invocation of authority. The defendant [justice of the peace] was not called upon to function as a judge. It was a void proceeding." 117 Or at 562-63.

Thus, *Utley* and its progenitor, *Shaw*, emphasize, and turn on, the distinction between a "total absence of jurisdiction" and an "erroneous exercise of jurisdiction." *Shaw*, 117 Or at 562-63.[5]

---

[5] *See also Hiber v. Creditors Collection Service*, 154 Or App 408, 421, 961 P2d 898, *rev den* 327 Or 621 (1998) (defect in warrant was, at most, a defect in court's exercise of its authority and did not deprive it of jurisdiction to issue arrest warrant); *Germeroth v. City of Oregon City*, 83 Or App 533, 537, 733 P2d 32 (1987) (municipal judge entitled to judicial immunity from false arrest action: the "court had *jurisdiction* * * *, whether or not the court had *authority* to order plaintiff's arrest in exercising its jurisdiction") (emphasis in original); *Quast v. City of Ontario*, 43 Or App 557, 559, 603 P2d 1210 (1979), *rev den* 288 Or 571 (1980) (municipal judge was immune from civil liability where he issued arrest warrant in

That distinction is dispositive here. Circuit courts do, in fact, possess jurisdiction to issue arrest warrants, *see* ORS 133.120, and plaintiff does not dispute that, in general, that power encompasses criminal contempt proceedings for violations of FAPA restraining orders. Rather, plaintiff's complaint is, at root, that the district attorney, in applying for the arrest warrant, and the court, in issuing the warrant, acted on erroneous facts—*i.e.*, that the restraining order was still in force on February 3, 1995, when, in fact, it was not. Those circumstances may implicate the correctness of the prosecutor's and the court's actions—but they do not obviate the *jurisdiction* to act. *See Quast v. City of Ontario*, 43 Or App 557, 559, 603 P2d 1210 (1979), *rev den* 288 Or 571 (1980) (fact that traffic fines had, in fact, been paid before court issued arrest warrant did not render issuance of warrant "wholly outside the jurisdiction of the court").

Ultimately and functionally, this case is indistinguishable from the quintessential "erroneous exercise of jurisdiction" identified in *Shaw*, *viz.*, "cases involving search-warrants issued upon defective or insufficient affidavits." 117 Or at 562. The inclusion of erroneous facts in the application for the arrest warrant did not deprive the court of jurisdiction to issue that warrant. Consequently, defendant's initiation of the prosecution, including the application for the warrant, was cloaked with judicial immunity.[6]

Affirmed.

---

good faith mistaken belief that traffic fine had not been paid: "But *Utley* also clothes a judicial officer with immunity if the action complained of is one 'within the colorable jurisdiction of the court.' Immunity applies 'unless a clear absence of jurisdiction is at once apparent to the ordinary understanding.'") (quoting *Utley*, 240 Or at 386).

[6] Plaintiff's constricted view of "jurisdiction" for immunity purposes would, effectively, circumvent *Watts* and its protections against prosecutorial liability. Bluntly: If a prosecutor who knowingly (indeed, maliciously) initiates a factually baseless prosecution is immune from civil liability under *Watts*, then how can a prosecutor who negligently initiates a prosecution based on an erroneous understanding of the facts be subject to liability?