Argued and submitted February 10, affirmed June 17, 2015

Kimberly FOSSEN,
an individual,
*Plaintiff-Respondent,*

*v.*

CLACKAMAS COUNTY,
a municipal corporation,
*Defendant-Appellant.*

Clackamas County Circuit Court
CV11090107; A155792

352 P3d 1288

Alexander Gordon, Assistant County Counsel, argued the cause for appellant. With him on the briefs was Stephen L. Madkour, Clackamas County Counsel.

John T. Devlin argued the cause for respondent. With him on the brief was Rosenthal Greene & Devlin, P.C.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

Believing plaintiff to be the target of a New York criminal investigation, Clackamas County sheriff's deputies cooperated with New York law enforcement officials in obtaining a New York warrant for plaintiff's arrest. They then arrested plaintiff and held her in the Clackamas County Jail for approximately 25 hours and released her after they determined that they had the wrong woman. Plaintiff brought claims against defendant for "False Arrest / False Imprisonment" and negligence. During a hearing on defendant's motion for summary judgment, the trial court ruled that plaintiff's false imprisonment claim could proceed under the theory that defendant unlawfully continued to detain plaintiff even after defendant determined that it had the wrong person. At trial, defendant moved for a directed verdict on both of plaintiff's claims, which the trial court denied. The jury awarded plaintiff $1,500 in economic damages and $100,000 in noneconomic damages.

Defendant appeals, raising six assignments of error. We reject the fifth and sixth assignments without written discussion. We write to address the first four assignments, all of which attack, on various grounds, the trial court's ruling that denied defendant's motion for a directed verdict and allowed plaintiff to submit her claims of "False Arrest/False Imprisonment" and negligence to the jury. We conclude that the trial court correctly allowed plaintiff's false imprisonment claim to go to the jury. Accordingly, we affirm the trial court's denial of defendant's directed verdict motion. Moreover, because plaintiff's false imprisonment claim and her negligence claim are simply alternate theories of liability, either of which is sufficient to support the damages award, our affirmance on the former claim obviates any need to consider defendant's arguments regarding the negligence claim.

The facts are not disputed. Plaintiff was arrested by Clackamas County sheriff's deputies on November 4, 2009, following an approximately week-long investigation that began when a detective from the New York City Police Department told the Clackamas County Sheriff's Office (CCSO) that plaintiff was a suspect in several New York

criminal cases. On the day of plaintiff's arrest, CCSO deputies were in communication with New York police. After receiving confirmation that a New York judge had signed an arrest warrant, CCSO deputies arrested plaintiff and took her to the county jail, where she was booked at 5:15 p.m.

During the booking process, plaintiff's fingerprints were taken. Those prints were subsequently sent to the Oregon State Police (OSP) so that they could be run through a database maintained by the Federal Bureau of Investigation (FBI). At 11:11 p.m. that evening, the CCSO learned from the OSP that plaintiff's fingerprints did not match any fingerprints on file with either OSP or the FBI, nor did they match the fingerprints of the New York suspect (which were on file with the FBI). Plaintiff remained in the county jail overnight. On the morning of November 5, a CCSO deputy called OSP and was informed that the results indicated that, unlike the New York suspect, plaintiff had never been arrested. At 3:00 p.m. that day, plaintiff was arraigned on a fugitive warrant before Judge Robert Herndon. No one from the CCSO advised Judge Herndon or plaintiff's attorneys about the results of the fingerprint search. Judge Herndon set a bail hearing for the following day, November 6, at 3:00 p.m.

Later on the afternoon of November 5, a CCSO jail technician, Manley, sent a teletype message to the New York police that stated as follows: "It has been determined by fingerprints that this is not the same person that you have a warrant out for. She is being released on your hold." Plaintiff was released at 6:10 p.m. on November 5, nearly 25 hours after being arrested, and approximately 19 hours after CCSO was informed of the fingerprint results.

Manley testified that no permission or order was required for plaintiff's release:

"Well, it's automatic when we find out somebody's not the person that's wanted for their state. I do that, 'cause there's no reason to hold them.

"* * * * *

"So I don't have to have an order. The order's from—there's no reason to hold them. It's not the same person. So that

would be me releasing it and doing our filing and letting her go."

A CCSO deputy, Anderson, also agreed that, "as soon as anyone from the [CCSO] knew that [plaintiff] was not the right person, she needed to be released from that jail cell." Expert witnesses at trial also testified that CCSO had an obligation to inform the prosecutor of the fingerprint results.

Plaintiff brought claims for "False Arrest/False Imprisonment" and negligence. Defendant moved for summary judgment on all claims, arguing principally that, because the arrest was made pursuant to a facially valid arrest warrant, defendant was immune under the doctrine of quasi-judicial immunity. According to defendant, the county could be liable for false imprisonment only if plaintiff could show that the magistrate who issued the arrest warrant had been deceived by the affidavit provided by the New York City police. At the hearing, plaintiff explained that her "False Arrest/False Imprisonment" claim encompassed two distinct theories of liability: (1) defendant became liable for the intentional tort of "false arrest" when it first arrested plaintiff; (2) defendant committed the tort of "false imprisonment" when it continued to imprison plaintiff after discovering that her fingerprints did not match those of the New York suspect. At the conclusion of the hearing, the trial court granted defendant's motion as to the false arrest claim, apparently concluding that the arrest warrant provided immunity for plaintiff's initial confinement. But the court ruled that plaintiff could proceed on her false imprisonment claim, on the theory that, even if the initial arrest was lawful, the imprisonment was rendered unlawful when the CCSO failed to release plaintiff promptly after learning of the fingerprint results. The court also allowed plaintiff to proceed on her negligence claim.[1]

---

[1] The trial court's order reads, in pertinent part:

"IT IS HEREBY ORDERED that Defendant Clackamas County's Motion for Summary Judgment is GRANTED in part. Plaintiff's claim that she was falsely arrested on November 4, 2009 is dismissed.

"IT IS FURTHER ORDERED that Defendant's Clackamas County's Motion for Summary Judgment is DENIED in all other respects. Plaintiff's negligence claim and her claim that she was falsely imprisoned on November 4, 2009 - November 5, 2009 are not dismissed."

At trial, after plaintiff concluded her case, defendant moved for a directed verdict. Defendant argued that (1) the trial court's summary judgment order dismissing the false arrest claim had also disposed of the false imprisonment claim because the two claims are legally "synonymous"; (2) defendant was immune from suit under the doctrine of quasi-judicial immunity; and (3) the trial court erred in allowing plaintiff to pursue a negligence theory because defendant's duties with regard to out-of-state warrants are defined and limited by statute, meaning that the general duty to exercise reasonable care did not apply to defendant under these circumstances. The trial court denied the motion. The jury concluded that defendant had committed the tort of false imprisonment and had been negligent in several respects. The jury awarded plaintiff $1,500 in economic damages and $100,000 in noneconomic damages.

On appeal, defendant reprises the arguments that it raised during its motion for a directed verdict. "A directed verdict should be entered only in the exceptional case where, from the facts taken in the light most favorable to plaintiff, reasonable persons could draw one inference and that inference being that defendant was not [liable]." *Hall v. State*, 43 Or App 325, 328, 602 P2d 1104 (1979), *aff'd*, 290 Or 19, 619 P2d 256 (1980). The torts of false arrest and false imprisonment have the same four elements: "(1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Hiber v. Creditors Collection Service*, 154 Or App 408, 413, 961 P2d 898 (1998), *rev den*, 327 Or 621 (1998) (citing *Lukas v. J. C. Penney Co.*, 233 Or 345, 353, 378 P2d 717 (1963)). Defendant argues that plaintiff's claim fails as a matter of law for two reasons: (1) the trial court's grant of summary judgment on the wrongful arrest claim also disposed of the wrongful imprisonment claim, and (2) plaintiff's confinement was not "unlawful" because it occurred pursuant to facially-valid court orders.

We reject defendant's first argument. The trial court's order granted summary judgment on "[p]laintiff's claim that she was falsely arrested on November 4, 2009," but plainly denied summary judgment on plaintiff's "claim that she

was falsely imprisoned on November 4, 2009 - November 5, 2009." Defendant's argument that the dismissal of one necessarily effected the dismissal of the other ignores the factual differences underlying plaintiff's two theories of liability. Although "false arrest" and "false imprisonment" contain identical legal elements, the two terms can be understood as "synonymous," as defendant argues, only to the extent that the theory of false imprisonment is based on the fact of the arrest. Here, plaintiff articulated a theory whereby, even if the initial arrest was lawful, the imprisonment became wrongful at a later time based on a change in circumstances. *See, e.g., Walker v. City of Portland*, 71 Or App 693, 698, 693 P2d 1349 (1985) (holding that the plaintiff raised a genuine issue of material fact on claim for false imprisonment, where "officers' initial detention of plaintiff was based on a reasonable suspicion that he was the suspect sought for a burglary and an assault; however, once they had determined that he was not that individual, the immediate circumstances that aroused their suspicion dissipated, and any further detention and inquiry was unreasonable"). Moreover, it is clear from the record at the summary judgment hearing that both the court and the parties used the terms "false arrest" and "false imprisonment" to distinguish between plaintiff's two theories of liability. We therefore reject defendant's view that the summary judgment order dismissing the false arrest claim necessarily disposed of the false imprisonment claim, either by operation of law or because the trial court intended that result. The trial court's order must be interpreted as allowing plaintiff's "False Arrest/False Imprisonment" claim to proceed to the jury, but only under plaintiff's second theory of liability.

As to defendant's second argument, we conclude that plaintiff proffered sufficient evidence to allow a reasonable juror to conclude that defendant unlawfully imprisoned plaintiff. After receiving the fingerprint results, defendant continued to detain plaintiff for an additional 19 hours. There was testimony that CCSO had the authority to release plaintiff based on the receipt of those results. Even if CCSO did not have that authority, the record also indicated that Clackamas County has a judge available 24 hours a day from whom defendant could have obtained an order for

plaintiff's release. Thus, a reasonable jury could conclude that defendant could and should have released plaintiff earlier than it did.

Defendant's resort to the doctrine of quasi-judicial immunity is unavailing. In support of that argument, defendant cites several cases in which officers were held to be immune from civil suit while carrying out court orders: *Fay v. City of Portland*, 311 Or 68, 804 P2d 1155 (1991); *Praggastis v. Clackamas County*, 305 Or 419, 752 P2d 302 (1988); and *Higgins v. Redding*, 34 Or App 1029, 580 P2d 580 (1978). Those cases stand for the proposition that, where a public official or employee performs acts "under a court order or directive," that person will have "absolute immunity" as long as (1) the order or directive is a permissible exercise of judicial authority, and (2) the acts comply with the order or directive. *Fay*, 311 Or at 73.

Defendant identifies two court orders in this case: the arrest warrant issued by the New York magistrate, and Judge Herndon's order at the arraignment. The New York warrant, at most, immunizes defendant regarding the initial arrest made pursuant to that warrant. It does not shield defendant from the consequences of continuing to hold plaintiff after defendant became aware that the factual basis for the arrest had completely evaporated. *See Walker*, 71 Or App at 698. Similarly, Judge Herndon's action is insufficient to confer immunity; by the time of that court appearance, CCSO had possessed the results of the fingerprint database search for nearly 16 hours. The wrongful imprisonment had already occurred.

Accordingly, we conclude that the trial court did not err in denying defendant's motion for a directed verdict on the false-imprisonment claim.

Defendant's remaining arguments concern whether it was proper to allow plaintiff to submit her negligence claim to the jury. We need not resolve that issue, however, because defendant's wrongful imprisonment claim and her negligence claims were simply alternative theories of liability. Consequently, the jury's determination that defendant was liable under the theory of false imprisonment is sufficient to support its award to plaintiff and the trial court's

judgment in favor of plaintiff. *See Dynagraphics, Inc. v. U.S. National Bank of Oregon*, 100 Or App 108, 110, 785 P2d 760, *rev dismissed*, 310 Or 120 (1990) (where plaintiff received "identical and overlapping damages" on both a negligence and a contract claim, it was only necessary to address one of those claims because "[a] proper verdict on either claim would independently support the judgment").

Affirmed.